UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CHARLES F. McVAY
UNITED STATES TRUSTEE
CHRISTINE A. MARCH
ASSISTANT UNITED STATES TRUSTEE
606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78476
Telephone: (361) 888-3261
FAX: (361) 888-3263

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | JOINTLY ADMINISTERED UNDER |
| | § | CASE NO. 07-20027-C-11 |
| SCOTIA DEVELOPMENT LLC | § | |
| | § | |
| | § | |
| THE PACIFIC LUMBER COMPANY | § | CASE NO. 07-20028-C-11 |
| BRITT LUMBER CO., INC. | § | CASE NO. 07-20029-C-11 |
| SALMON CREEK LLC | § | CASE NO. 07-20030-C-11 |
| SCOTIA INN, INC. | § | CASE NO. 07-20031-C-11 |
| SCOTIA PACIFIC COMPANY LLC | § | CASE NO. 07-20032-C-11 |
| | § | |
| DEBTORS. | § | |

**MOTION OF THE UNITED STATES TRUSTEE
TO TRANSFER CASES TO THE NORTHERN DISTRICT OF CALIFORNIA**

**LOCAL RULE 9013(b) NOTICE:  THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE BY SUCH DATE AS MAY BE SPECIFIED BY THE COURT.  A HEARING ON THIS AND OTHER MOTIONS TO TRANSFER VENUE HAS BEEN SCHEDULED FOR FEBRUARY 15, 2007.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
**********************************************************************

TO THE UNITED STATES BANKRUPTCY JUDGE
RICHARD S. SCHMIDT:

COMES NOW, Charles F. McVay, United States Trustee, through the undersigned counsel, who files this motion to transfer the venue of these six jointly administered cases pursuant to 28 U.S.C. § 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure. The interest of justice and the convenience of the parties would be best served if these cases were transferred to the Northern District of California.

## I.  JURISDICTION AND STATUTORY PREDICATES

1.      These six debtors filed voluntary petitions in this court on January 18, 2006. This Court has jurisdiction over these cases under 28 U.S.C. 1134 and 157(a).  This motion is a core proceeding under 28 U.S.C. §157(b).  The relief requested may be granted under 28 U.S.C. § 1412 and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure.

## II.  FACTS RELATED TO VENUE

1.      Venue in the Southern District of Texas for the cases of five of these six debtors (Pacific Lumber, Scotia Pacific, Britt Lumber, Salmon Creek and Scotia Inn – hereinafter referred to as the "California Debtors") depends completely on the existence of venue in this district for the remaining debtor (Scotia Development).  The California Debtors have no relevant connections to this district other that their status as affiliates of Scotia Development. The California Debtors admit in their Voluntary Petitions that their places of business and principal assets are all in the North District of California -- in Alameda and Humboldt Counties.

2.      The California Debtors are principally engaged in the forest products industry. All of these activities take place in northern California, including growing and harvesting of

-2-

redwood and douglas fir timber, milling of logs into lumber, and manufacturing lumber into a variety of finished products.  Pacific Lumber owns or manages, directly or through its California subsidiaries, approximately 210,000 of virtually continuous commercial timberlands located in Humboldt County.  Pacific Lumber's and Britt Lumber's sawmills in Scotia and Arcata, California are located in close proximity to these timberlands.

3.      Pacific Lumber, parent of all of the debtors, has owned and managed commercial timberlands in Humboldt County, California for over 130 years.  It is headquartered in the midst of this region, in the small town of Scotia, about 30 miles south of Eureka on highway 101 and about 250 miles north of San Francisco and Oakland.  Pacific Lumber, which built the town of Scotia and continues to use its 90 year old headquarters building there, proudly describes Scotia as "the last true company town in America."  In addition to having its main office and sales office in Scotia Pacific Lumber has consolidated its non-specialty milling operations there, in a $25 million mill facility and $4.5 million planer facility.

4.      On the petition date, Pacific Lumber, Britt Lumber, and Scotia Pacific collectively employed approximately 586 employees – all in California.  Scotia is home to about 250 Pacific Lumber families, some of whom have worked at Pacific Lumber for generations.  Many employees live in the neighboring communities of Rio Dell, Fortuna, and Eureka.  Scotia Development, Salmon Creek, and Scotia Inn have no employees.

5.      The California Debtors help sustain the communities in which their employees and suppliers live.  Pacific Lumber provides Scotia with a medical and dental facility for employees, leases the fully-supported grade school to the state for $1 per year, and provides college scholarships to graduating seniors of every employee.  The vast majority of creditors of the California Debtors are located in California.

6.     The California Debtors' timberlands and operations are regulated by the State of California and the United States.  Numerous regulatory proceedings and lawsuits regarding these timberlands and operations are pending in California.

7.     Scotia Development was formed approximately seven months before filing for bankruptcy (and one month after Pacific Lumber first consulted with its Texas bankruptcy counsel).  During those seven months it appears to have had minimal operations.  It has a single bank account at a local bank, in which there has been minimal activity.  It has no employees and conducts its business through its president.  It rents 344 square feet of office space on a month to month basis for $548/month.  Its only assets are two options, acquired on the petition date, for $10,000, to purchase two parcels of undeveloped land in Texas totaling approximately 26 acres.  Its only contract is with one of the California Debtors.  It has at most $10,500 in unsecured debts, owed to just two alleged creditors.  One is located in California, and the other is the lessor of the office space.  Filing its bankruptcy case may have cost Scotia Development more in professionals fees than it would have taken to satisfy its total claims.

8.     Although Scotia Development is a subsidiary of Pacific Lumber, it has no apparent connection to the California Debtors' timber and forest products business nor to the California Debtors' need for bankruptcy relief.  Created by Pacific Lumber at the same time as the California Debtors were laying off employees, and selling land in order to service their debt, it appears that Scotia Development's sole value for the California Debtors was to provide a basis on which to file their cases in this district.

## III.  ARGUMENT

9.     Venue of a case or proceeding may be transferred either when in the interest of justice or for the convenience of the parties.  28 U.S.C. §1412; Fed.R.Bankr.Proc. 1014(a)(1).

Both alternatives provide grounds for transferring these cases to the Northern District of California.

**A.  Venue of these cases should be transferred in the interest of justice.**

10.      Courts repeatedly have found that forum shopping is disfavored by the federal courts and constitutes cause to transfer venue.  For example, in addressing an out-of-state debtor's effort to justify venue in Texas on account of a negligible subsidiary in Texas, Judge Leif Clark wrote:

> Forum shopping has never been favored by federal courts, and courts are quick to discern the evil in all its disguises.  In bankruptcy, too often the tactic is masked by pious pronouncements about the debtor's right to select the most advantageous of several possible forums, in order to advance the prospects of reorganization. That rationale, however, should be taken with several grains of salt.  Too many corporations with familiar household names are operating in bankruptcy under the name of some obscure subsidiary whose venue happens to coincide with either the debtor's or the debtor's lawyers perception of the most favorable judicial forum in which to operate. (citations and footnotes omitted).

*In re Abacus Broadcasting Corp.*, 154 B.R. 682, 668 (Bankr. W.D. Tex. 1993).  *See also*; *In re Eclair Bakery Ltd.*, 255 B.R. 121, 142 (Bankr. S.D.N.Y. 2000) (holding that interests of justice required a venue transfer to avoid rewarding the debtor's forum shopping and to protect the integrity of the bankruptcy system)*; In re Maruki*, 97 B.R. 166, 170 (Bankr. S.D.N.Y. 1988) (suggesting that forum shopping is inconsistent with interests of justice); *.In re Winn-Dixie Stores, Inc*, No. 05-11063, Bankr. S.D.N.Y., April 12, 2005 Transcript of oral decision, at p. 151, 167, 170 (where debtor created entity in district solely to obtain venue in that district, interests of justice required court to transfer venue to another district).

11.      All of the facts available to the United States Trustee at this time point to the conclusion that the California Debtors created Scotia Development principally, if not solely, to

establish a basis for venue in this district and thereby to avoid the requirement that they file their bankruptcy cases in the Northern District of California. Such forum shopping should be remedied by transferring the cases to the Northern District of California.

12.     Scotia Development was formed as a Texas entity just one month after Pacific Lumber first consulted with Texas bankruptcy counsel and slightly longer than the minimum 180 days required to create venue in this district. It has minimal business activities, assets or liabilities and no employees. To the extent any of its business, assets and liabilities are *bona fide*, they are in a line of business (real estate speculation) that is unrelated to the 130 year old, northern California timber and forest products business of the California Debtors. Even if *bona fide*, Scotia Development's business, assets and liabilities have negligible value to or consequences on the California Debtors efforts to reorganize.

13.     The interests of justice would be served if these cases were administered in the Northern District of California, where the California Debtors' principal assets, operations and creditors are located, instead of this district, where the California Debtors have no relevant connections. Justice would be served through transfer by denying the debtors' the fruits of their forum shopping and by providing the vast majority of parties in interest with easier and less costly access to the court and greater opportunities to participate in the proceedings. No matter how easy it might be for a Californian to participate telephonically or to file papers through the Internet, that is no substitute for local administration. Indeed, there are many times when local administration is not possible because of a debtor's far-flung or transient operations, in which case technology must fill the gap. But here, there is no such dilemma, because the California Debtors' heavily concentrated assets and operations in the Northern District of California make local administration there possible. Pacific Lumber's timberlands are virtually contiguous, and its mills and other operations are situated closely to those timber holdings. It is perhaps as

closely rooted in the Northern District of California as any debtor its size might ever be connected to a single judicial district.

**B.   Venue of these cases should be transferred for the convenience of the parties.**

14.     The basic factors to be weighed in deciding whether to transfer venue for the convenience of the parties have been set out in *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979) cert. denied 444 U.S. 1045.  *See also In re Pope Vineyards*, 90 B.R. 252, 255 (Bankr. S.D. Tex 1988) (collecting cases following *Commonwealth Oil*).  Those factors are:

(1) The proximity of creditors of every kind to the Court;

(2) The proximity of the bankrupt (debtor) to the Court;

(3) The proximity of the witnesses necessary to the administration of the estate;

(4) The location of the assets;

(5) The economic administration of the estate; and

(6) The necessity for ancillary administration if bankruptcy should result.

*In re Commonwealth Oil*, 596 F. 2d, at 1247. n2[1].

In addition to the *Commonwealth Oil* factors, some courts that follow them have also added considerations, such as "a state's interest in having local controversies decided within its borders."  *In re Thomasson*, 60 B.R. 629, 832 (Bankr. MD Tenn. 1986); *see Pope Vineyards*, 90 B.R., at 255 n.2 (collecting additional factors and cases).

15.     The first factor, proximity of creditors, weighs in favor of transfer.  According to the lists of creditors filed with the Court, the debtors have thousands of creditors and parties in

---

[1]     *Commonwealth Oil* was decided under statutes that preceded current section 1412, however the *Commonwealth Oil* standards continue to apply.

interest, the vast majority of whom are located in California.  According to the California

Debtors' lists of 20 largest unsecured creditors: (a) 14 of 20 of Scotia Pacific's largest

unsecured creditors are located in California, and none are located in Texas; (b) 18 of 20 of

Pacific Lumber's largest unsecured creditors are located in California, and none are located in

Texas;2 and (c) 15 of 20 of Britt Lumber's largest unsecured creditors are located in California,

and none are located in Texas (Salmon Creek and Scotia Inn have not unsecured creditors).  In

contrast, Scotia Development has at most two unsecured creditors – one in California and one in

Texas – and the one in Texas is allegedly owed only $500.

        16.     The second factor, <u>proximity of the debtor to the court</u>, also weighs in favor of

transfer.  Scotia, California is approximately 2,000 miles from Corpus, Christi.  To reach this

Court from Scotia requires a full day of travel, each way.  If venue were transferred to the

Northern District of California, this distance would be substantially reduced.  San Francisco and

Oakland are approximately 250 miles from Scotia by highway 101.  There are eight direct

flights daily from Eureka/Arkata (30 miles from Scotia) to San Francisco, lasting approximately

one hour and 15 minutes.

        17.     Equally important, the travel for principal counsel of the California Debtors and

the creditors' committee would be heavily curtailed if venue is changed, as none of these

attorneys are in Texas, and the majority are in California.  The firms representing the creditors'

committee and four of the five California Debtors are both in San Francisco.  The principal firm

representing Scotia Pacific appears to be staffing the matter out of several offices, including

those in New York and California.  While a venue change would increase Scotia Development's

travel burden, Scotia Development has negligible assets and liabilities to administer and will

---

2Pacific Lumber has filed an amended list of its 20 largest unsecured creditors, in which it
inexplicably removed three California creditors and added three non-California creditors,
including an alleged Texas creditor with a consulting contract claim.

play almost no role in the reorganization of the California Debtors, so there will be very little practical burden on it.  Its chosen principal counsel is also in San Francisco, so it appears that proximity is not important to it.

18.     The third factor, proximity of witnesses to the court, also weighs in favor of transfer.  Whatever witnesses may be necessary in these proceedings are more likely to be based in California, near the California Debtors' business and the northern California timber industry, than they are to be near Corpus Christi.  To the extent witnesses are required, all employees are located in California ,and it is fair to assume that most witnesses on behalf of creditors and other parties in interest also will be located principally in California.

19.     The fourth factor, location of assets, also weighs in favor transfer.  The bulk of the California Debtors' assets are literally rooted in Humboldt County, California.  Remaining non-timber assets, such as mills, are also located in and tied to Humboldt County, through the need for proximity to the timber.  Collectively, the debtors' assets outside Corpus Christi are worth hundreds of millions of dollars.  In contrast, the debtors' have negligible assets in Corpus Christi.

20.     The fifth factor, economic administration of the estate, largely follows the first four factors, which all weigh in favor of administering these estates in a venue proximate and accessible to the debtors' management, professionals, operations, assets and creditors.

21.     The sixth factor, necessity for ancillary administration, in this case likely implicates the need for adversary proceedings.  It is anticipated that avoidance actions brought on behalf of the estates will likely reflect the California-heavy demographic of the debtors' creditors.  It would be an unnecessary and extreme burden on these defendants if they had to defend themselves in Texas instead of the Northern District of California.

22.     The last factor, <u>a state's interest in having local controversies decided within its borders</u>, also weighs in favor of transfer.  The debtors, and the State of California in its own motion to transfer venue, readily point to the environmental regulation, proceedings and litigation currently pending in California to which the debtors are parties.  The State's interest in a local resolution of a uniquely parochial issue is undeniable.  The land and timber in California, the use of those natural resources, and any sale of the same, impacts California, not Texas.  To the extent uses impact endangered species and other unique and irreplaceable natural resources, that impacts both present and future generations of Californians.  Seventeen species of fish, birds, amphibians, reptiles and mammals are designated for protection under the California Debtors' Habitat Conservation Plan.

23.     The facts in these cases are strikingly similar to those in *In re Pope Vinyards*, 90 B.R. 252 (Bankr. S.D. Tex. 1988).  The court's decision to transfer venue in that case provides meaningful precedent for this Court to follow.  Pope Vineyards was in the business of developing and operating 4,625 acres of vineyards in Napa Valley, California.  Pope filed its petition in the Southern District of Texas, because a number of its affiliates, who were in the energy business, had pending bankruptcy cases in the district.  After weighing the *Commonwealth Oil* factors, the court transferred venue to the Northern District of California. The court was influenced by, among other things, the facts that the energy business was operated separately from the vineyards, all of the creditors had California addresses, the debtor's management resided in California, and the principal assets of the business were tied to the land in California.

## Conclusion

WHEREFORE, the United States Trustee prays that the Court transfer the venue for all the jointly administered cases to the Northern District of California.

-10-

Respectfully submitted,

CHARLES F. McVAY
UNITED STATES TRUSTEE

By: /s/ Christine A. March
Christine A. March
Texas Bar No.12968020
606 N. Carancahua St., Ste. 1107
Corpus Christi, TX  78476
Telephone:  (361)888-3261
Fax:  (361)888-3263