IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | JOINTLY ADMINISTERED |
| | § | |
| SCOTIA DEVELOPMENT LLC, ET AL., | § | Case No. 07-20027-C-11 |
| | § | |
| Debtors. | § | Chapter 11 |

Related Docket Nos. 212, 377 & 595
Hearing: April 10, 2007 @ 11:00 a.m. CST

THIS PLEADING APPLIES ONLY TO
**SCOTIA PACIFIC COMPANY LLC**, CASE NO. 07-20032

### NOTEHOLDER GROUP'S EMERGENCY REQUEST FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 158(D)(2)

The Ad Hoc Group of Timber Noteholders (the members of which hold or manage, as of the date hereof, more than 95% in aggregate principal amount outstanding of the Timber Notes, the "**Noteholder Group**")[1] in the above captioned chapter 11 case, respectfully submits this emergency request for certification, pursuant to 28 U.S.C. § 158(d)(2) and Interim Bankruptcy Rule 8001(f), of its appeal of this Court's "Findings of Fact and Conclusion of Law and Final Order" dated April 5, 2007 (docket entry no. 595, the "**Final Order**" a copy of which

---

[1] The current members of the Noteholder Group include: Angelo, Gordon & Co. L.P., on behalf of certain managed accounts and funds; Avenue Investments, L.P.; Avenue International, Ltd.; Avenue Special Situations Fund III, L.P.; Avenue-CDP Global Opportunities Fund, L.P. US; Avenue Special Situations Fund IV, L.P.; Banc of America Securities, Inc.; Camulos Master Fund LP; CarVal Investors LLC; Citigroup Global Markets Inc.; CSG Investments, Inc.; Davidson Kempner Capital Management LLC, on behalf of certain affiliated investment funds; Deutsche Bank Securities Inc.; D. E. Shaw Laminar Portfolios, L.L.C.; ECO Master Fund Ltd.; ECR Master Fund Ltd.; Gruss & Co.; funds managed by GSO Capital Partners LP; HBK Capital Management; Intermarket Corp.; J.P. Morgan Securities Inc.; KeyBanc Capital Markets; Lehman Brothers Inc.; Murray Capital Management (on behalf of certain managed accounts and funds); Northeast Investors Trust; Par IV Capital; Phoenix Investment Partners; Plainfield Special Situations Master Fund Limited; QDRF Master Ltd; QVT Financial LP; RockView Capital; TCW Credit Mortgage and Watershed Asset Management, L.L.C. The members of the Noteholder Group each act in their own individual interests, and neither the individual members nor the Group as a whole purport to act on behalf of or to represent any other holder of Timber Notes.

is attached hereto) denying the Noteholder Group's motion (docket entry no. 212, the "**SARE Motion**") pursuant to Bankruptcy Code § 101(51B) and § 362(d)(3).[2]

## SUMMARY OF ARGUMENT

1.  The Noteholder Group submits this request for certification to permit the United States Court of Appeals for the Fifth Circuit (the "**Fifth Circuit**") to address the important legal questions presented by the Final Order's determination that Scotia Pacific Company LLC's ("**Scopac**") does not qualify as a "single asset real estate" debtor ("**SARE**") under the recently amended provisions of § 101(51B) of the Bankruptcy Code that is subject to the expedited reorganization procedures mandated by § 362(d)(3) of the Bankruptcy Code.

2.  A direct and expedited appeal to the Fifth Circuit is necessary and crucial to serve the interests of justice in this case. The relief sought in the Motion was an order declaring that Scopac is an SARE debtor that must reorganize expeditiously. Congress granted (and recently expanded) this important right to secured creditors (such as the Noteholder Group) because it recognized that SARE debtors often misuse Chapter 11 as a dilatory litigation tactic to the substantial prejudice of the rights of their creditors. In other words, Congress recognized that "justice delayed is justice denied" in SARE cases.

3.  To remedy this problem, Congress has mandated that 90 days after filing for bankruptcy (or 30 days after a court ruling regarding the applicability of § 362(d)(3) of the Bankruptcy Code) SARE debtors must propose a reasonably confirmable plan of reorganization or commence making monthly interest payments to their secured creditors. *See* 11 U.S.C. § 362(d)(3).

---

[2] Capitalized terms used but not defined herein shall have the meaning given to them in the SARE Motion. Contemporaneously herewith, the Noteholder Group is filing a motion for an emergency hearing regarding this request for certification of appeal.

4.	Absent expeditious appellate review, the relief sought in SARE Motion will be meaningless and unattainable because the mere passage of time would permit Scopac to delay the expedited reorganization required by statute. Again, "justice delayed is justice denied" here.

5.	The issues presented for appeal by the Final Order are novel questions of law that have not been addressed by the Fifth Circuit or the Supreme Court. These questions of law involve resolving conflicting decisions by the first three bankruptcy courts that have been presented with these questions since Congress amended § 101(51B) in 2005. Moreover, given the clear statutory mandate requiring an expedited reorganization at issue here, the appeal presents "matters of public importance" and unquestionably "would materially advance the progress of this case." Under such circumstances, 28 U.S.C. § 158(d)(2) mandates that the Court certify the Noteholder Group's appeal for review by the Fifth Circuit.

### FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED

**A.	Facts Underlying the Motion Regarding Scopac's Operations**

6.	At trial, the Noteholder Group stipulated to all facts presented in Scopac's written response to the Motion and Scopac's counsel's opening statement at trial. With no factual dispute, the appeal presents only legal questions determined in the Final Order.

7.	Scopac owns approximately 200,000 acres of private timberland and has the exclusive right to harvest timber on about 10,500 additional acres of private timberland owned by its parent, Pacific Lumber Company ("**Palco**") and another one of its subsidiaries (collectively, the "**Scopac Timberland**").

8.	The Scopac Timberland constitutes commercial real property.

9.	Scopac grows trees and then sells those trees to Palco. In order to do so, Scopac engages in a variety of activities necessary and incidental to the foregoing, including regulatory

compliance; the planning and layout of Timber Harvest Plans ("THPs"), which are required to harvest timber from the Scopac Timberland; the submission, negotiation, approval and implementation of THPs; the supervision of the actual harvest of the timber by Palco; the site preparation, replanting and vegetation control of harvest sites; and the management of timber stands during the decades in which the trees grow to maturity ("**Scopac's Silvicultural Operations**").

10. Scopac's Silvicultural Operations require the services of numerous scientists and foresters, many of whom have advanced degrees. The Scopac Timberland are operated and managed pursuant to a common plan by the same scientists, foresters and other employees, without regard to the location of or regulatory environment with respect to each parcel of Scopac Timberland.

11. As Scopac's witnesses admitted, Scopac's Silivcultural Operations amount to the operation of a "tree farm."

12. As stated in Scopac's public filings with the Securities Exchange Commission, "Scopac generates substantially all of its revenues from the sale of logs to Palco."

13. Scopac also engages in miscellaneous other activities on its property, but none of those activities generate material revenue and all of those activities are incidental to the harvesting of the Scopac Timberland.

14. Scopac engages in no substantial business other than its operation of the Scopac Timberland. Scopac's LLC Agreement and its Timber Note Indenture prohibit Scopac from engaging in any substantial business other than its operation of the Scopac Timberland and activities incidental thereto.

**B.     Section 101(51B) of the Bankruptcy Code**

15.    Bankruptcy Code § 101(51B) defines "single asset real estate" as:

[1] real property constituting a single property or project, other than residential real property with fewer than 4 residential units,
[2] which generates substantially all of the gross income
[3] of a debtor who is not a family farmer and
[4] on which no substantial business is being conducted by a debtor other than the business of operating the real estate and activities incidental.

11 U.S.C. § 101(51B).

16.    The Noteholder Group asserts that Scopac fits this definition because, *inter alia*:

- It is undisputed that the Scopac Timberland consists of 210,500 virtually contiguous acres of timberland that is managed by Scopac's employees as a single property pursuant to a common plan.

- Scopac admits that the sale of timber harvested from the Scopac Timberland generates substantially all of its gross income.

- Scopac admits that it is essentially a "tree farm" which is implicitly included in the SARE definition by Congress' express exclusion of "family farmers."

- Scopac operates no "substantial business" other than the business of its Silvicultural Operations to operate the Scopac Timberland to harvest timber for sale and activities incidental thereto.

17.    However, the Court disagreed with the Noteholder Group's legal analysis.

**B.     The Final Order**

18.    The Final Order determined that, as a matter of law, Scopac was not a "single asset real estate" debtor under § 101(51B) and therefore was not subject to the expedited procedures set forth in § 362(d)(3) of the Bankruptcy Code. The Final Order stated the following legal conclusions on this issue:

i.    Scopac is an "active" business operation and therefore cannot be found to be a single asset real estate debtor because § 101(51B) only applies to businesses that passively "own or acquire property merely with an eye for holding it and flipping it when the market turns or idly sit and collect rent." *See* Final Order at 17-24.

5

ii. Scopac is not a single asset real estate debtor because its revenues are the product of commercial endeavors of its employees, not the passive receipt of investment income. *See id.* at 17.

iii. Scopac does not own property constituting a "single property or project" because Scopac's timber operations are spread across a diverse landscape and its timber rights are not appurtenant to the land and are not real estate under either the Bankruptcy Code or California statute. *See id.* at 19.

iv. Scopac is engaged in a "substantial business" other than operating the real property because it has "active" operations even though the operation of such business centers around the use of Scopac's real property. *See id.* at 21-24.

## QUESTIONS PRESENTED

19. The Noteholder Group's appeal of the Final Order presents the following legal questions:

   i. Whether § 101(51B) is limited to "passive" businesses that merely "own or acquire property merely with an eye for holding it and flipping it when the market turns or idly sit and collect rent."

   ii. Whether § 101(51B) applies to an "active" business, such as Scopac's Silvicultural Operations, that involve operating real property to generate substantially all of the debtor's gross income.

   ii. Whether the term "single property or project" under 11 U.S.C. § 101(51B) of the Bankruptcy Code applies to Scopac's Silvicultural Operations which involve operating the Scopac Timberland and its real property interests in timber pursuant to a common plan.

## RELIEF REQUESTED

20. The Noteholder Committee respectfully submits that the Court certification of these questions of law for consideration by the Fifth Circuit is required by 28 U.S.C. § 158(d)(2)(b)(i).

## ARGUMENT

21.     In addition to amending Bankruptcy Code § 101(51B) to expand the scope of the expedited reorganization procedures for "single asset real estate" debtors ("**SARE**"), the 2005 bankruptcy amendments also streamlined bankruptcy appeals to provide for a fast-track access to the United States Courts of Appeal by enacting 28 U.S.C. § 158(d).

22.     This new section provides that, upon consensual certification of the parties or certification by the relevant Bankruptcy Court or District Court, an appeal may be taken directly to the relevant United States Court of Appeals, if *any of three* circumstances exist:

> (i) the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order or decree involves a question of law requiring resolution of conflicting decisions; *or*
>
> (iii) an immediate appeal from the judgment, order or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A).

23.     Certification is mandatory where this Court determines that *any* of the three circumstances exists.  *Id.* § 158(d)(2)(B) ("If the bankruptcy court . . . determines that a circumstance specified in clause (i), (ii) or (iii) of subparagraph (A) exists . . then the bankruptcy court *shall* make the certification described in subparagraph (A)." (emphasis added)).[3]

24.     Congress enacted this new appellate procedure to address problems related to the "time and cost factors attendant to the [previous] appellate system" and the fact that "decisions

---

[3] After certification by this Court, the Fifth Circuit must authorize the certification, which is contemplated by the Fifth Circuit's local rules.  *See* 28 U.S.C. § 158(d)(2)(A) (providing appellate jurisdiction to the courts of appeals where there is lower court certification and the court of appeals "authorizes the direct appeal."); Fifth Cir. Local Rule 47.4.1 (contemplating "appeals from United States Bankruptcy Courts to this court.").

rendered by the district court as well as the appellate panel are generally not binding and lack *stare decisis* value." House Rep. No. 109-31, Pt. 1, 109th Cong. 1st Sess. 148-49 (2005).

25. While only one of the three circumstances under § 158(d) needs to be present to mandate certification, all three circumstances are present here.

A. **The Final Order Involves Questions of Law as to Which There is No Controlling Fifth Circuit or Supreme Court Decision**

26. As the Final Order and the parties' briefs on the Motion clearly establish, there is no controlling authority by the Fifth Circuit or the Supreme Court on the legal issues presented by the SARE Motion. Indeed, the Final Order contains this Court's resolution of novel legal questions presented by the SARE definition as it was materially expanded by the 2005 bankruptcy amendments. Thus, this Court's interpretation of the term "single asset real estate" and subsidiary terms within the SARE definition clearly present questions of law that are eligible for appeal under § 158(d)(2)(A)(i) and therefore certification is required under § 158(d)(2)(B)(i).

27. In addition, § 158(d)(2)(A)(i) alternatively provides a ground for direct appeal where "the judgment, order or decree . . . involves a matter of public importance." The scope of the expedited reorganization procedures required in SARE cases is clearly a matter of public importance because it goes to the *raison d'etre* of the Chapter 11 process—the reorganization of a debtor—and the effectiveness of Congress' recent 2005 amendments that mandated an expansion of the expedited reorganizations required in SARE cases. Moreover, as noted below, the scope of § 101(51B) has now arisen as a hotly disputed issue in at least three bankruptcy cases since becoming effective in October 2005. For this additional reason alone certification is required by § 158(d)(2)(B)(i).

**B.     The Final Order Involves Questions of
        Law Requiring Resolution of Conflicting Decisions**

28.     The term "single asset real estate" has been interpreted by numerous courts in various manners. Since the 2005 amendments to § 101(51B), this Court and two others have issued decisions that are in conflict. This Court and the United States Bankruptcy Court for the Eastern District of Texas have issued decisions this year interpreting the SARE definition to apply only to "passive" entities that do not engage in any "active" operations with respect to the real property at issue. *See* Final Order at 17-24; *In re Club Golf Partners, L.P.*, Case No. 07-40096 (Bankr. E.D. Tex. Feb. 15, 2007) (unpublished).

29.     On the other hand, the United States Bankruptcy Court for the District of New Jersey has reached the opposite conclusion, rejecting the "passive" versus "active" distinction adopted by this Court's Final Order. *See In re Kara Homes et al. v. Nat'l City Bank et. al.*, __ B.R. __, 2007 WL 748470 (Bankr. D.N.J. March 12, 2007).

30.     In addition, the statutory SARE definition requires reconciliation with a substantial body of pre-§ 101(51B) jurisprudence regarding "single asset" debtors that this Court and the United States Bankruptcy Court for the Eastern District of Texas found to provide a non-statutory gloss on the meaning of the § 101(51B) that is not consistent with the plain meaning of the statute.

31.     In light of the fact that Congress materially expanded the "single asset real estate definition" (by removing the former $4 million debt cap under § 101(51B) and expressly indicating that farming operations fall within the SARE definition), these conflicting decisions represent an important issue of law that urgently needs appellate clarification. Thus, this Court's interpretation of the term "single asset real estate" and subsidiary terms within the SARE

9

definition clearly present questions of law eligible for appeal under § 158(d)(2)(A)(ii) and therefore certification is required under § 158(d)(2)(B)(i).

### C. An Immediate Appeal from the Final Order Would Materially Advance Scopac's Chapter 11 Case

32. By enacting § 362(d)(3) of the Bankruptcy Code, Congress has mandated that SARE cases proceed at an expedited pace to protect the interests of secured creditors. If Scopac is determined to be a "single asset real estate" debtor it would be required to expeditiously file (within 30 days of such ruling) a plan of reorganization "that has a reasonable possibility of being confirmed within a reasonable period of time."[4] Such a result would redound to the benefit of all creditors, not just the Noteholder Group.

33. Chapter 11 cases exist for the sole purpose of confirming a plan of reorganization. Obviously, an appellate ruling that would require Scopac to file a reasonably confirmable plan of reorganization on an expedited time frame would "materially advance [Scopac's] case." Without appellate review at this point, Scopac will be permitted to seek to use up to an additional 15 months to file a plan of reorganization in its case—i.e., up to 15 times as long as it would be permitted if it is a SARE debtor.

34. Moreover, a direct appeal to the Fifth Circuit would better serve the interests of justice because it would definitively resolve the issue of whether Scopac is a SARE debtor subject to expedited reorganization in a more efficient time frame than following the normal appellate procedure through the United States District Court for the Southern District of Texas before reaching the Fifth Circuit. In the context of this case, the delay inherent to the normal

---

[4] 11 U.S.C. § 362(d)(3) (mandating relief from stay unless such a plan is filed or certain payments are commenced). Scopac can no longer seek an extension of the § 362(d)(3) period, which must be ruled upon before the expiration of the 90 day period after the petition date. Section 362(d)(3) of the Bankruptcy Code provides that Scopac could alternatively being making monthly interest payments to the holders of the Timber Notes. Given the economic realities of Scopac's case this option is not feasible. Scopac has no unencumbered property which it could use to finance such payments.

10

appellate process would likely deprive the Noteholder Group of any meaningful relief under the Motion.

35. For example, even if the Noteholder Group were to win an appeal at the District Court level, Scopac would have the ability to appeal any such order (and potentially obtain a stay pending appeal) to the Fifth Circuit. Justice delayed in this context is truly justice denied. As note above, this is precisely the kind of problem that Congress sought to remedy by enacting § 158(d)(2).

36. Thus, this Court's interpretation of the term "single asset real estate" and subsidiary terms within the SARE definition clearly present questions of law eligible for appeal under § 158(d)(2)(A)(iii) and therefore certification is required under § 158(d)(2)(B)(i).

## CONCLUSION

37. For the foregoing reasons, the Noteholder Group respectfully requests the Court to certify the Noteholder Group's appeal of the Final Order to the Fifth Circuit pursuant to 28 U.S.C. § 158(d)(2) and Interim Bankruptcy Rule 8001(f) substantially in the form attached hereto as Exhibit B.

Dated:  April 9, 2007

BRACEWELL & GIULIANI LLP

Evan D. Flaschen (304232)
Gregory W. Nye (300188)
Kurt A. Mayr (425858)
One Goodwin Square
225 Asylum Street, 26th Floor
Hartford, CT 06103
Telephone: (860) 947-9000
Facsimile: (860) 760-6789
E-Mail: evan.flaschen@bgllp.com

and

GARDERE WYNNE SEWELL LLP

By:     /s/  John P. Melko
John P. Melko (13919600)
1000 Louisiana, Suite 3400
Houston, TX 77002-5007
Telephone: (713) 276-5727
Facsimile: (713) 276-6727

*Attorneys for the Ad Hoc Group of Timber Noteholders*

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of April, 2007 a true and correct copy of the foregoing instrument was forwarded to all parties listed on the attached Service list

/s/ John P. Melko
John P. Melko