UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SCOTIA DEVELOPMENT LLC, *et al* | § | Case No.  07-20027-C-11 |
| | § | Jointly Administered |
| Debtor. | § | (Chapter 11) |

**THE INDENTURE TRUSTEE'S PROPOSAL
IN SUPPORT OF ITS REQUEST FOR STAY PENDING APPEAL**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

The Bank of New York Trust Company, N.A., as Indenture Trustee for the Timber Notes (the "Indenture Trustee"), in response to the Court's request, made at the close of final arguments on the Indenture Trustee's Emergency Motion for Stay Pending Appeal (the "Motion"), for written proposals regarding the security to be provided to preserve the status quo and obtain a stay pending the appeal of the Judgment and Order (I) Confirming First Amended Joint Chapter 11 Plan of Reorganization for the Debtors, as Further Modified, with Technical Amendments, Proposed by Mendocino Redwood Company, LLC, Marathon Structured Finance Fund, LP and Official Committee of Unsecured Creditors, (II) Denying Confirmation of Indenture Trustee Plan, (III) Denying Motion to Appoint Chapter 11 Trustee (the "Confirmation Order")[Docket No. 3302],  would show as follows[1]:

**A.  Scopac**

1.  Because the Indenture Trustee is a creditor only of Scotia Pacific Company, LLC ("Scopac"), and not of The Pacific Lumber Company ("Palco"), the Indenture Trustee and Scopac should only be required to provide security pursuant to Rule 8005 of the Federal Rules of

---

[1] Contemporaneously herewith and incorporated herein by reference, the Indenture Trustee is filing its Trial Brief Regarding the Governing Legal Standard and Proof Burdens Relative to Setting Bond/Security for Stay Pending Appeal.

1

70346032.8

Bankruptcy Procedure concerning Scopac creditors in order to obtain a stay pending the appeal of the Confirmation Order.

2. The Indenture Trustee will enable Scopac to provide that security by consenting to a DIP loan from Lehman Commercial Paper Inc. ("Lehman") to Scopac in the principal amount of $25 million (the "Lehman DIP Loan") that will prime the lien of the holders of the Timber Notes. The Lehman DIP Loan will be more than adequate to permit Scopac to fund its costs of operations ("Scopac Costs") through December 31, 2008, as set forth in Exhibit A (the "Scopac Budget") to the Proffer of John Young entered into evidence at the hearing on the Motion, a copy of which is attached hereto as **Exhibit A**. Further, in the event the appeal continues beyond that date, according to Mr. Young's "as-is cash flow forecast," Scopac will have approximately $22 million in borrowing availability from the Lehman DIP Loan through June 2009. Funding for the Lehman DIP Loan will thus limit the harm to unsecured creditors of Scopac and preserve the status quo by preserving Scopac's going concern operations.

3. Funding from the Lehman DIP Loan will also provide for or enable payment of the following kinds of Scopac Costs that are often required to be paid under a more traditional bond:

    a. Taxes;

    b. Insurance premiums;

    c. Roads, Reforestation and Environmental Compliance;

    d. Accrued interest at the federal judgment rate on the allowed claims of Scopac unsecured creditors; and

    e. Accrued interest on accrued but unpaid administrative expenses.

4. As further protection during the pendency of the appeal, Scopac has agreed to take commercially reasonable steps to implement as fully as possible certain of MRC/Marathon's

policies with respect to the operation of the commercial timberlands, including but not limited to (a) avoiding traditional clearcut methods; (b) seeking Forest Stewardship Counsel certification; and (c) adopting MRC's old growth harvesting policy.  These policies will minimize or eliminate any potential deleterious effect of a delay in consummation of the MRC/Marathon Plan on the timberlands that MRC and Marathon would obtain under that plan.

5.      The Indenture Trustee and Scopac should not be required to pay or bond any additional amounts concerning Scopac.

6.      In particular, the Indenture Trustee and Scopac should not be required, as Mendocino Redwood Company ("MRC") and Marathon Structured Finance L.P. ("Marathon") have suggested, to make any payments or post any bond concerning Scopac based on the possibility that MRC might decline to go forward with the investment it proposes under the MRC/Marathon Plan.  Scopac and the Indenture Trustee have arranged for realistic and viable financial alternatives (a) to address reasons that MRC might decline to go forward, and (b) to deal with any financial repercussions should MRC actually choose not to go forward with its obligations under the MRC/Marathon Plan.

    a.    First, MRC has asserted that it might be compelled to exercise its right to terminate if the MRC/Marathon Plan is not consummated in 60 days because MRC might lose its $325 million funding from American AgCredit PCA.  To assure that that will not be a problem, Beal Bank Nevada has given a Commitment Letter on exactly the same terms as MRC presently has from American AgCredit PCA (minus the requirement of a $1 million fee if this bridge financing is not replaced by future financing from American AgCredit PCA).  The Beal Bank Nevada Commitment Letter, if accepted by MRC before July 16, 2008, will be effective until June 30, 2009.  *See*, attached **Exhibit B.**

    b.    Second, in the event MRC actually chooses not go forward with its obligations under the MRC/Marathon Plan, Scopac has already filed a provisional motion for a sale pursuant to section 363 (the "Provisional

3

§363 Sale Motion")[2] which will provide a superior solution for Scopac (and even Palco) versus what is currently proposed in the MRC/Marathon Plan. The Provisional §363 Sale Motion has the following beneficial features:

(i) It is supported by the Indenture Trustee, by far Scopac's largest secured and unsecured creditor;

(ii) Its provides for payment of the approximately $500,000 of Scopac general unsecured claims;

(iii) It provides for the payment of all Scopac administrative claims;

(iv) The Provisional § 363 Sale can be consummated promptly;

(v) Scopac has committed financing from Lehman that is more than sufficient to enable it to operate pending the consummation of such a sale in 60 days;

(vi) Scopac has a commitment from Sierra Pacific Industries ("SPI") to buy the Palco mill assets (including the cogeneration plant) and to invest over $30 million to improve the mill and construct an additional mill in the town of Scotia that will generate a high demand for logs and thus enhance the value of the Scopac Timberlands;

(vii) Marathon's remaining collateral, the town of Scotia, can be abandoned to Marathon. Just as the Indenture Trustee's collateral (the Scopac Timberlands) will be made more valuable by SPI's investment in mills in Scotia, the employment and economic viability created by SPI's investment in Scotia will increase the value of Marathon's town of Scotia collateral; indeed, the SPI proposal will treat Marathon's DIP Loan and Term Loan Claims favorably when compared to the treatment proposed for Marathon's claims under the MRC/Marathon Plan.

7.  In light of the above, Scopac and the Indenture Trustee should not be required to

provide protection against the "self-inflicted injury" that would occur if MRC or Marathon were

---

[2] *See*, Emergency Motion of Scopac For Authority To Sell Assets Pursuant to 11 U.S.C § 363 In The Event No Plan of Reorganization Is Confirmed. [Docket No. 3174]; Supplement to Emergency Motion of Scopac For Authority To Sell Assets Pursuant to 11 U.S.C § 363 In The Event No Plan of Reorganization Is Confirmed [Docket No. 3195]; Sierra Pacific Industries' Response to Supplement to Emergency Motion of Scopac For Authority To Sell Assets Pursuant to 11 U.S.C § 363 In The Event No Plan of Reorganization Is Confirmed [Docket No. 3196]; and, Second Supplement to Emergency Motion of Scopac For Authority To Sell Assets Pursuant to 11 U.S.C § 363 In The Event No Plan of Reorganization Is Confirmed [Docket No. 3293].

4

70346032.8

to decide not to extend the 60-day "drop-dead" provision under Section 11.3 of its own MRC/Marathon Plan.

8.  However, if the Court nevertheless were to conclude that the Indenture Trustee must also provide protection against the possibility that MRC or Marathon will, during the pendency of the appeal, fail to extend the self-imposed 60-day period provided in Section 11.3 of the MRC/Marathon Plan, then the Court should do so only under the following conditions:

   a. The stay of the Confirmation Order should continue during the appeal and no security should be required to protect against the contingency of the Plan Proponents' failure to close for so long as MRC and Marathon continue to extend the expiration date of such 60-day deadline to close pursuant to Section 11.3 of the MRC/Marathon Plan (as such date may previously have been extended from time to time, the "Plan Consummation Deadline");

   b. In the event that MRC or Marathon shall elect not to extend the Plan Consummation Deadline, then such electing party shall file with the Bankruptcy Court, and serve on counsel for the appellants, at least 10 days prior to the Plan Consummation Deadline, a notice of (1) its irrevocable election <u>not</u> to extend the Plan Consummation Deadline under Section 11.3 of the MRC/Marathon Plan and (2) its irrevocable commitment to consummate the MRC/Marathon Plan on the Plan Consummation Deadline unless further stayed (a "Non-Extension Notice"). The Non-Extension Notice shall be irrevocable, and no further extensions of the Plan Consummation Deadline shall be effective following a Non-Extension Notice;

   c. Upon the filing of such a Non-Extension Notice, any appellee may request, and the Bankruptcy Court shall schedule at the earliest feasible time, an emergency hearing at which time the Bankruptcy Court shall determine whether, in light of the Non-Extension Notice, the posting of a bond or other security should be imposed as an additional condition to the continuation of the stay pending appeal and, if so, the amount and terms of any such bond or other security (a "Supplemental Stay Order"). The Indenture Trustee reserves all of its rights with respect to a Supplemental Stay Order, including the right to oppose any requirement for a bond under such circumstances and to contest the amount and terms thereof;

   d. If a Supplemental Stay Order directs that a bond or other security be posted as an additional condition to the continuation of the stay pending appeal, the stay shall expire (the "Stay Expiration Date") at Noon Central Time on the day before the Plan Consummation Deadline, <u>unless the</u>

5

<u>Indenture Trustee shall have posted such bond or other security on or before Noon Central Time on the Stay Expiration Date</u>.  If the Indenture Trustee has not posted such bond or other security on or before the Stay Expiration Date, then the stay pending appeal shall expire without further order of the Court, and the MRC/Marathon Plan may be consummated on or before the Plan Consummation Deadline unless a court of competent jurisdiction otherwise continues the stay in effect.

e. If the Indenture Trustee posts any bond or other security as provided in a Supplemental Bond Order, then the stay shall continue in effect to enjoin the consummation of the MRC/Marathon Plan, the Plan Consummation Deadline shall not be further extended, and Section 11.3 of the MRC/Marathon Plan shall operate in accordance with its terms to render the MRC/Marathon Plan null and void.

8. MRC, Marathon and the State and Federal Regulators have argued that a bond should be posted to provide security for a number of other items relating to Scopac.  Certain of these are set forth below along with the reasons why there is no basis for any additional bond requirement:

a. PBGC Claim

<u>Response</u>:  The PBGC claim is only contingent at Scopac.  The pension plan is unlikely to be terminated during the appeal.  Furthermore, in the unlikely event that the appellants are unsuccessful on appeal but the Marathon/MRC Plan is still not consummated and the Palco Pension Plan is terminated, Maxxam, Inc. is jointly and severally liable for the PBGC Claim and Scopac should not be required to protect or to bond against the potential default of the non-debtor Maxxam.

b. Scopac Administrative Expense Claims

<u>Response</u>: the vast majority of the holders of such claims have stated that they will not request or require that security for their claims be posted.  Furthermore, pursuant to the terms of Scopac's proposed 363 Sale, the likely result if the Marathon/MRC Plan is not consummated, all Scopac Administrative Expense Claims will be paid in full.

c. Scopac Priority Claims and Scopac Trade Claims

<u>Response</u>:  Priority Claim Claimants and Scopac Trade Claim Claimants will receive the federal judgment rate of interest that has accrued during the pendency of any appeal, and thus, will not be prejudiced by any delay in receiving payment on their claims.  Furthermore, pursuant to the terms

6

      of Scopac's proposed 363 Sale, the likely result if the Marathon/MRC Plan is not consummated, Scopac Trade Claims will receive $500,000, the same amount they would receive under the Marathon/MRC Plan.

   d.   Bank and Restructuring Fees

      <u>Response</u>:  Bank Fees and accrued interest will be paid as they become due to Bank of America.  Restructuring Fees up to $350,000 will be paid monthly.

   e.   Environmental Fines - Fire and Other Speculative Events - Retention Bonuses

      <u>Response</u>:  There is no legal basis to require appellants to bond for every possible contingency that might occur, particularly when, as in the case of possible environmental fines, no evidence was presented.  Furthermore, all testimony elicited at the stay hearing, including that from Dr. Barrett and Mr. Johnston, supported the fact that any damage to the timberlands caused by earthquakes, fire and/or other acts of God, is not foreseeable and is highly unlikely  Accordingly, the appellants should not be required to fund additional amounts to cover such improbable scenarios.   Finally, Retention Bonuses do not become due and payable until the Effective date of a confirmed plan of reorganization.  *See* Dkt. No. 1259

**B. Palco**

1.   <u>Because the Indenture Trustee is not a creditor of Palco, it should not be required to fund continued operations to maintain the status quo at Palco or to post any bond relating to Palco.</u>  Such funding should be the obligation of Marathon, Palco's major secured creditor, which has proposed a Plan that should not be consummated because, *inter alia*, it is premised on taking value from Scopac's creditors for its own benefit.

2.   Alternatively, if the Court orders that the Indenture Trustee must also provide for maintenance of the status quo at Palco, then the Indenture Trustee, with a complete reservation of any and all of its rights and as an alternative to the posting of a bond, proposes to do so through the following "Log Discount Program," which would be in effect as long as the Indenture Trustee or Scopac are pursuing an appeal of the Plan Confirmation Order:

7

a. Beginning in June 2008 and ending in December 2008, Scopac will provide Palco each month with the lesser of (i) 5MMBF or (ii) all redwood logs available for delivery from Scopac to Palco or (iii) the amount of redwood logs required by Palco to maintain its operations as set forth in the Addendum to the New Master Purchase Agreement attached as **Exhibit C**, providing for the terms of log purchase, type of logs, times for delivery and other material terms of the Log Discount Program; and

b. Scopac will waive payment from Palco for the monthly value of logs supplied under this Log Discount Program, except (1) to the extent of any amounts that Scopac will owe Palco for road maintenance, reforestation and other work performed by Palco for Scopac during each month of the Log Discount Program pursuant to the New Master Service Agreement or the New Master Purchase Agreement or other payment for harvest costs under the New Master Purchase Agreement, such amounts shall be set off against Scopac's obligation to pay for these services; and (2) to the extent that such waiver results in Palco building up a net cash position in excess of $1 million by December 31, 2008, then Scopac can request that the Court modify or condition the terms of the Log Discount Program to avoid a windfall to Palco.

3. The Log Discount Program will permit Palco to pay its reasonable costs and expenses listed in the proffer of John Young during the pendency of the appeal. *See*, "Consolidated Cash Flow Forecast Scopac" attached as Exhibit B to the proffer of John Young (the "Consolidated Budget"). The Indenture Trustee and Scopac should not be required to pay any additional expenses of Palco pending resolution of the appeal of the Confirmation Order, nor should they be required to provide a bond concerning losses by creditors of Palco.

4. The Log Discount Program has been approved by the Scopac Board of Directors.

5. The Indenture Trustee has the authority under the Indenture to consent to the priming contained in the Lehman DIP Loan and the related Log Discount Program based on the direction from a super-majority of holders of the Timber Notes totaling well in excess of 67%. See Indenture Section 7.13 ("[T]he Majority Holders shall have the right to direct the time, method, and place of conduction any Proceeding for any remedy available to the Trustee under this Indenture . . . .") and Section 10.2(a) (subject to certain caveats, "the Majority Holders may

waive compliance by the Issuer [Scopac] with any provision of this Indenture, the Deed of Trust or the Timber Notes . . . ."); see also, Deed of Trust Section 10.8 (subject to certain caveats, "the Majority Secured Parties may waive compliance with any provisions of the Deed of Trust . . . ."). *See,* form of direction letter attached as **Exhibit D**, which has been executed by a super-majority of holder of the Timber Notes.

6.  For the same reasons discussed in paragraphs A6 and 7 above, the Indenture Trustee should not be required to make any payments or post any bond at this time concerning Palco based on the possibility that MRC or Marathon might decline to go forward with the investment it has proposed under the MRC/Marathon Plan confirmed by the Court. Paragraph A8 above is incorporated herein by reference.

7.  MRC, Marathon and the State and Federal Regulators have argued that a bond should be posted to provide security for a number of other items relating to Palco. Certain of these are set forth below along with the reasons why there is no legal basis for any additional bond requirement:

   a.  PBGC Claim

   Response: The PBGC claim is only contingent at Palco. The pension plan is unlikely to be terminated during the appeal. Furthermore, in the unlikely event that the appellants are unsuccessful on appeal but the Marathon/MRC Plan is still not consummated and the Palco Pension Plan is terminated, Maxxam, Inc. is jointly and severally liable for the PBGC Claim and Scopac should not be required to protect or to bond against the potential default of the non-debtor Maxxam.

   b.  Palco Administrative Expense Claims

   Response: Palco Administrative Expense Claims that were incurred prior to the entry of the Confirmation Order are not properly required to be paid by the appellants. Palco's professional fees are not currently being paid because Palco is administratively insolvent. However, because these professional fee claims would be paid if the MRC/Marathon Plan were to be consummated, the Consolidated Budget makes provision for interest at the federal judgment rate that has accrued during the pendency of the

9

appeal as calculated on Exhibit E to the proffer of John Young, thus eliminating any harm caused by any delay. Moreover, the Consolidated Budget also provides payment of $100,000 per month for Palco Financial Advisory/Appraisal fees. Additionally, it is not anticipated that Palco will incur significant ongoing Professional Fees as it is not a party to the MRC/Marathon Plan or the appeal.

c. Palco Priority Tax and Other Priority Claims; Palco Trade Claims and Palco General Unsecured Claims

Response: The Consolidated Budget provides that these Claimants will receive the federal judgment rate of interest that has accrued during the pendency of the appeal as calculated on Exhibit E to the proffer of John Young, thus, they will not be prejudiced by any delay in receiving payment on their claims.

d. Retention Bonuses

Response: Retention Bonuses do not become due and payable until the effective date of a confirmed plan of reorganization. *See* Dkt. No. 1275.

e. Roads, Reforestation and Environmental Compliance; Palco insurance premiums; Palco taxes; Other Palco Operating and Capital Expenditures; Britt Mill costs for security and utilities; Palco Pension costs; Power Plant and Town costs

Response: These funds cover theses Costs are provided for in the Consolidated Budget or through Palco's sales of lumber milled from free timber under the Discount Log Program.

f. DIP Loan Interest

Response: Although interest is not currently being paid to Marathon on account of its DIP Loan, the Consolidated Budget provides for payment of over $2.2 million through December 2008.

g. Maturity of Marathon DIP.

Response: No one, including Marathon, will suffer any consequence when the Marathon DIP matures. In the unlikely event Marathon seeks to foreclose on its collateral, Scopac has obtained a commitment from SPI to buy the Palco mill assets (including the cogeneration plant) and to invest over $30 million to improve the mill and construct an additional mill in the town of Scotia that will generate a high demand for logs and thus enhance the value of the Scopac Timberlands and Marathon's collateral, the town of Scotia. The SPI proposal will treat Marathon's DIP Loan and Term Loan Claims favorably when compared to the treatment proposed

10

for Marathon's claims under the MRC/Marathon Plan and will maintain Palco as a going concern.

Dated: July 14, 2008,
Houston, Texas.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

By: */s/ Zack A. Clement*
Zack A. Clement        (SBTX 04361550)
William R. Greendyke (SBTX 08390450)
R. Andrew Black        (SBTX  02375110)
1301 McKinney Street, Suite 5100
Houston, TX 77010-3095
Telephone: 713-651-5434
Fax: (713) 651-5246

-and-

Toby L. Gerber        (SBTX 07813700)
Louis R. Strubeck, Jr. (SBTX 19425600)
Richard S. Krumholz  (SBTX 00784425)
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

**COUNSEL FOR THE BANK OF NEW YORK TRUST COMPANY N.A., AS INDENTURE TRUSTEE FOR THE TIMBER NOTES**

11

70346032.8