

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

**ENTERED
07/15/2008**

| | | |
|---|---|---|
| IN RE: | § | JOINTLY ADMINISTERED |
| | § | |
| SCOTIA DEVELOPMENT LLC, | § | Case No. 07-20027-C-11 |
| ET AL, | § | |
| Debtors. | § | Chapter 11 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE EMERGENCY MOTION OF THE INDENTURE TRUSTEE FOR STAY PENDING APPEAL AND THE PETITION <u>FOR DIRECT APPEAL TO THE FIFTH CIRCUIT COURT OF APPEALS</u>

On this day came on for consideration the Emergency Motion of the Indenture Trustee For Stay Pending Appeal and for Direct Appeal to the Fifth Circuit Court of Appeals. The Court, having heard the evidence and arguments of counsel, finds as follows.

### Background

1.      On June 6, 2008, following a lengthy trial regarding confirmation of five competing Chapter 11 plans of reorganization (the "Confirmation Hearing"), this Court issued detailed Findings of Fact and Conclusions of Law [Docket No. 3088] ("Findings") supporting confirmation of the plan of reorganization proposed by Mendocino Redwood Company, LLC ("MRC"), Marathon Structured Finance Fund L.P. ("Marathon"), and the Official Committee of Unsecured Creditors (the "Committee") (as modified on July 8, 2008, [Docket No. 3300] the "MRC/Marathon Plan").

2.      On July 8, 2008, this Court entered a Judgment and Order (a) confirming the MRC/Marathon Plan; (b) denying confirmation of the plan proposed by the Bank of New York Trust Company, N.A. as Indenture Trustee for the Timber Notes (the

1

"Indenture Trustee"); and (c) denying the Indenture Trustee's motion to appoint a Chapter 11 Trustee (the "Confirmation Order"). [Docket No. 3302].

      3.     On July 9, 2008, the Indenture Trustee filed a Notice of Appeal from the Confirmation Order and an Emergency Motion for a Stay Pending Appeal. [Docket Nos. 3304 and 3309]. Other entities, including Debtor Scotia Pacific Company LLC ("Scopac") and certain individual noteholders also filed notices of appeal and joined in the Indenture Trustee's motion for a stay pending appeal (all references herein to the Indenture Trustee apply to Scopac and those noteholders). The Indenture Trustee also sought direct appeal of the Confirmation Order to the Fifth Circuit Court of Appeals. [Docket No. 3308].

      4.     The motion for a stay pending appeal and petition for direct appeal to the Fifth Circuit were opposed by MRC, Marathon, the Committee, the Palco Debtors, the California State Agencies, federal wildlife agencies and Bank of America. [*See, e.g.,* Docket Nos. 3184, 3326, 3331, 3332, 3334]

      5.     On July 10-11, 2008, this Court held an evidentiary hearing on the Indenture Trustee's motion for a stay pending appeal and petition for a direct appeal to the Fifth Circuit (the "Stay Hearing"). Following the Stay Hearing, this Court directed the parties to make certain submissions by Monday July 14, 2008, at 1:00 pm Central Time. Specifically, the Indenture Trustee was directed to submit a detailed explanation in writing of the program it orally proposed in various forms during the Stay Hearing regarding security to protect parties in interest should a stay pending appeal be granted. MRC, Marathon and the Committee were directed to submit their position on how the facts in the record should be applied to the recognized test for stays pending appeal, including their

calculation of the amount of a bond they believe the Indenture Trustee should have to post in order to obtain a stay pending appeal.  The parties made the requested submissions.

6.      This Court incorporates herein the Findings of Fact and Conclusions of Law issued in connection with confirmation of the MRC/Marathon Plan [Docket No. 3088] as well the Findings of Fact and Conclusions of Law announced on the record on July 7, 2008, in connection with the Indenture Trustee's Motion for a Superpriority Administrative Expense Claim.

7.      The Court, having considered the evidence presented at the Stay Hearing, the arguments of counsel at the Stay Hearing, the papers filed by the parties prior to the Stay Hearing, the submissions made by MRC, Marathon, the Committee and the Indenture Trustee on July 14, 2008, and the entire record of these bankruptcy proceedings, makes the following Findings of Fact and Conclusions of Law[1] with respect to the Indenture Trustee's motion for a stay pending appeal and petition for direct appeal to the Fifth Circuit.

### The Indenture Trustee Has Not Met Its Burden For Obtaining a Stay

8.      The Indenture Trustee must satisfy each of the following elements in order to obtain a stay pending appeal of the Confirmation Order pursuant to Federal Rule of Bankruptcy Procedure 8005: (a) a substantial likelihood of success on the merits of its appeal, (b) irreparable injury if the stay is not granted, (c) the granting of a stay will not substantially harm other parties and (d) the granting of the stay would serve the public interest.  *See Arnold v. Garlock Inc.*, 278 F.3d 426, 438 (5th Cir. 2001); *In re First South Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987); *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982);

---

[1] Findings of Fact shall be construed as Conclusions of Law and vice versa where appropriate.  *See* Federal Rule of Bankruptcy Procedure 7052.

*Smith v. Schmidt*, 2007 U.S. Dist. LEXIS 41901, at *12 (S.D. Tex. June 8, 2007). Failure to establish any of these four elements is grounds to deny the request for a stay. *See Arnold*, 278 F.3d at 438-39; *Smith*, 2007 U.S. Dist. LEXIS 41901, at *12.

9.    The Indenture Trustee failed to establish any of these elements and thus did not satisfy its burden for a stay pending appeal. Further, on balance, the equities of these cases do not support granting a stay pending appeal.

### (a) No Likelihood of Success on the Merits

10.    The issues that the Indenture Trustee intends to raise on appeal were all raised at the Confirmation Hearing. This Court carefully considered all of the evidence presented at the Confirmation Hearing and the applicable law and concluded that the Indenture Trustee's arguments against confirmation of the MRC/Marathon Plan were without merit. None of the evidence or arguments presented at the Stay Hearing, in the papers submitted in connection with such hearing, or the entire record of these bankruptcy proceedings, changes this Court's opinion regarding confirmation of the MRC/Marathon Plan.

11.    In denying a stay pending appeal, "when the issue appealed is mostly a factual question over which the Bankruptcy Court has broad discretion, such discretion is unlikely to be overturned on appeal…Thus with respect to questions of fact, the movant usually fails to satisfy" the element for a stay pending appeal that there be a likelihood of success on the merits." *Smith*, 2007 U.S. Dist. LEXIS 41901, at *16; *see In re Burkett*, 279 B.R. 816, 817 (Bankr.W.D.Tex. 2002) (movant unable to demonstrate likelihood of success on appeal necessary for a stay because "this court's findings of fact, based primarily on an evaluation of the credibility and demeanor of witnesses, are highly unlikely to be reversed on appeal as 'clearly erroneous'").

12.     The key issue during the confirmation hearing that resulted in confirmation of the MRC/Marathon Plan was the determination of the value of the timberlands. This Court heard extensive testimony from a multitude of experts and reviewed thousands of pages of expert reports and exhibits. At the end of that process, this Court made credibility determinations that the testimony of MRC and Marathon's experts was entitled to substantial weight while the testimony of the Indenture Trustee and Scopac's experts was entitled to little weight. Nonetheless, the Court did not simply adopt the conclusions of the MRC and Marathon experts, but rather made an informed factual finding that the value of the timberlands is not more than $510 million. The Indenture Trustee cannot show that this key factual finding was clearly erroneous and likely to be overturned on appeal.

13.     Apparently recognizing this tremendous hurdle, the Indenture Trustee attempts to turn valuation into a legal issue, but again fails to show a likelihood of success. This Court applied well recognized law in confirming the MRC/Marathon Plan. The Indenture Trustee is being paid the present value of its secured claim in cash as that value was found by this Court. The Indenture Trustee seeks more than is provided for when Section 1129 of the Bankruptcy Code requires that a secured creditor receive the present value of its secured claim. The Indenture Trustee could have tried to obtain more than the cash amount of its secured claim by making an election under Section 1111(b) of the Bankruptcy Code. It made the tactical and strategic decision against that option and, in doing so, surely understood that it would receive a cash payment equal to the present value of its secured claim. Moreover, the Court lifted exclusivity, giving the Indenture Trustee the same opportunity as Marathon to propose a plan of reorganization. The Indenture Trustee knew from the mediations that Marathon was proposing a comprehensive plan to reorganize all the debtors and that there was overwhelming support for

5

such a plan. Nevertheless the Indenture Trustee chose not to propose its own such comprehensive plan. The Indenture Trustee was in a far better position (perhaps as much as 20:1) to pay the value of Marathon's secured claim than Marathon was to pay the value of the Indenture Trustee's secured claim. The Indenture Trustee's real complaint concerns the value placed on the timberlands by the Court - - a fact question.

14.    The MRC/Marathon Plan honors both the letter and spirit of the Bankruptcy Code by paying exactly what the Bankruptcy Code requires: cash equal to the value of the allowed secured claim on the effective date. There is little doubt that this has been allowed in reorganization cases for decades. In this case, the Noteholders will receive the value of their collateral in cash on the Effective Date - -exactly what they are supposed to receive for a secured claim. This treatment is not extraordinary and fully complies with the Bankruptcy Code.

15.    The Indenture Trustee reasserts its entire legal argument against confirmation in support of its stay pending appeal, including the following: (1) that the Court erred in concluding that the MRC/Marathon Plan could be crammed down because it is neither fair nor equitable; (2) that the Court erred in concluding that the MRC/Marathon Plan complied with the absolute priority rule; (3) that the Court erred in confirming the MRC/Marathon Plan because it proposes an improper substantive consolidation of the Debtors; (4) that the Court erred in confirming the MRC Marathon Plan because it fails to pay inter-company administrative claims in violation of section 1129(a)(9); (5) that the Court erred in confirming the MRC/Marathon Plan because it requires an improper offset of Indenture Trustee's superpriority administrative claim against its secured claim; (6) that the record was inadequate to support the court's conclusion that the MRC/Marathon Plan provides the Indenture Trustee with at least as much as it would receive in a Chapter 7 liquidation as required under section 1129(a)(7); (7) that

6

the Court erred in concluding that the MRC/Marathon Plan complies with sections 1122, 1123, and consequently 1129(a)(1); (8) that the MRC/Marathon Plan discriminates unfairly against Class 9, which is of equal rank and priority with Class 8; (9) that the MRC/Marathon Plan improperly manufactures an impaired class; (10) that the exculpation clause in the MRC/Marathon Plan resulted in non-compliance with sections 1129(a)(1) and 524(e); and (11) that the Committee breached its fiduciary duties to Scopac's creditors by favoring the interests of Palco's creditors at the expense of Scopac's creditors. However, this Court carefully considered and rejected every one of these arguments after hearing evidence at the Confirmation Hearing and receiving pre- and post-hearing briefs from the parties on these issues.

16.    The primary arguments made by the Indenture Trustee on appeal are based on this Court's factual findings which are fully supported by the record and not subject to being reversed unless clearly erroneous.  The factual issues were the subject of a contested hearing involving testimony from numerous fact and expert witnesses, making reversal on appeal unlikely.  To the extent the Indenture Trustee raises legal arguments, these issues are well settled and not likely to be reversed on appeal.  This Court finds that there is not a substantial likelihood of success on appeal.

### (b) Lack of Irreparable Injury to the Indenture Trustee

17.    The only assertion of irreparable harm made by the Indenture Trustee is that absent a stay, its appeal might become moot.  While it is true that the Indenture Trustee's appeal may become moot if a stay is not granted, the majority of courts addressing this issue have concluded that the risk of equitable mootness alone does not constitute irreparable harm sufficient to justify a stay pending appeal.  *See In re Convenience USA, Inc.*, 290 B.R. 558, 563 (Bankr. M.D. N.C. 2003); *In re Sunflower Racing,*

*Inc.*, 223 B.R. 222, 225 (D. Kan. 1998); *In re BA-MAK Gaming Int'l, Inc.*, 1996 WL 411610, at *2 (E.D. La. July 22, 1996); *In re 203 N. LaSalle St. P'ship*, 190 B.R. 595, 597-98 (N.D. Ill. 1995); *In re Clark*, 1995 WL 495951, at *6 (N.D. Ill. Aug. 17, 1995); *In re Moreau*, 135 B.R. 209, 215 (N.D.N.Y. 1992); *In re Kent*, 145 B.R. 843, 844 (Bankr. E.D. Va. 1991); *In re Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987); *Great Barrington, Inc.*, 53 B.R. 237, 240 (Bankr. D. Mass. 1985); *In re Baldwin United Corp.*, 45 B.R. 385, 386-87 (Bankr. S.D. Ohio 1984); *In re Dakota Rail Inc.*, 111 B.R. 818, 821 (Bankr. D. Minn. 1990). This Court agrees with that view. If the risk of equitable mootness alone were sufficient to constitute irreparable harm, virtually every confirmation order in every bankruptcy case would be subject to a stay pending appeal. The Indenture Trustee did not assert any harm other than potential equitable mootness and, accordingly, did not demonstrate irreparable harm necessary for a stay pending appeal. *See In re Calpine Corp.*, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008).

18.     Further, under the MRC/Marathon Plan, the Indenture Trustee will receive, among other things, a minimum of $513.6 million in cash on the Effective Date. If the Indenture Trustee were successful on appeal, it would be able to auction Scopac's Timberlands. The result of an auction of the Timberlands is highly speculative. Any sale is subject to regulatory review and oversight. Further, the Timberlands have been offered for sale since before this bankruptcy case began, and certainly since this Court terminated exclusivity, yet no firm offers were made. [Findings 249-53]. This Court found, however, that an auction is not likely to result in a higher recovery to the Indenture Trustee than under the MRC/Marathon Plan. [Findings 287]. Any harm to the Indenture Trustee is speculative and the Indenture Trustee has not demonstrated irreparable harm absent a stay

pending appeal.

### (c) Harm to Other Parties

19.     The testimony both at the Confirmation Hearing and at the Stay Hearing demonstrated that other parties in interest will be irreparably harmed if a stay pending appeal is granted.  The Indenture Trustee argues that only harm to Scopac should be considered.  This is not correct.  The Confirmation Order and the MRC/Marathon Plan provide for reorganization of all of the Debtors and a stay of the Confirmation Order will therefore impact many parties, not just the creditors of Scopac.

20.     If the MRC/Marathon Plan is stayed pending appeal, there is a substantial risk that MRC and/or Marathon may be unwilling or unable to proceed with the MRC/Marathon Plan at or before the conclusion of any appeal.  There is no dispute that if a stay is in place 60 days following the date of the Confirmation Order, MRC has an absolute right to withdraw the MRC/Marathon Plan.  Moreover, MRC and Marathon can jointly withdraw the MRC/Marathon Plan at any time prior to it going effective.  The willingness of MRC and Marathon to proceed with the MRC/Marathon Plan could be impacted by the delay inherent in any stay pending appeal.  By way of example, interest rates could change, alternative transactions could become available, MRC could decide it is unwilling to continue to reserve more than $200 million of capital for a transaction that is tied up in court for an indeterminate period of time, the economy could further deteriorate, or the fires currently plaguing Northern California could affect the Scopac Timberlands or MRC's existing properties.  Moreover, in order to pay its cash consideration under the MRC/Marathon Plan, MRC obtained a $325 loan commitment.  Extension of this commitment is beyond MRC's control.

21.     The risk that the MRC/Marathon Plan could collapse if a stay is granted is increased because the $75 million DIP facility Marathon provided to the Palco Debtors matures on August 6, 2008, and there are no funds to repay Marathon. If the MRC/Marathon Plan is not promptly consummated, Marathon would have the right to exercise its rights and remedies with respect to the Palco Debtors' assets in order to recover on its unpaid DIP facility.

22.     If the MRC/Marathon Plan is withdrawn, there is a significant risk that the Debtors will be liquidated. It is undisputed that the Indenture Trustee is significantly undersecured in the Scopac case and that Marathon is substantially undersecured in the Palco cases. As a result, liquidation will result in the inability to pay administrative claims or priority claims, all of which will be paid in full under the MRC/Marathon Plan. Moreover, unsecured creditors who will receive substantial recoveries under the MRC/Marathon Plan will receive little or nothing in the event of liquidation.

23.     The testimony at the Confirmation Hearing and the Stay Hearing demonstrated that a stay pending appeal could result in the liquidation of Palco and shutdown of the Scotia Mill and Palco's cogeneration plant. This is because Palco is effectively out of cash, has not been paying its professionals or interest on the Marathon DIP loan and cannot afford to purchase logs necessary to operate. It is undisputed that the liquidation of Palco (i) will cause the loss of hundreds of jobs, (ii) will eliminate the recovery by Palco's creditors (administrative, priority, secured and unsecured) who are owed millions of dollars and who would receive substantial payments under the MRC/Marathon Plan, (iii) will create significant environmental risks, (iv) will further

10

devalue Marathon's security in Palco's assets and (v) will damage the local economy. Local residents will be significantly impacted if Palco's cogeneration plant and the Scotia Mill are shut down. It is fair to say that for the community, an entire way of life is at risk.

24.     The Indenture Trustee submitted declarations from another prospective sawmill operator, Sierra Pacific Industries ("SPI"), who expressed interest in purchasing the sawmill and the cogeneration plant. The Court finds that SPI's interest is speculative and deserving of little weight. No definite binding documentation was presented, and the interest of this sawmill operator is conditioned on a to-be-signed 15 year log supply agreement, perhaps with a to-be determined future owner of the Timberlands. Moreover, Marathon indicated that the proposed purchase of the Scotia Mill by SPI is at a price that is not acceptable to Marathon and the Indenture Trustee does not have the authority to commit to selling Palco's ownership of the Scotia Mill. Finally, the unwillingness of SPI to testify at a deposition or to appear in Court during the Stay Hearing reduces the weight to be accorded their interest in the Scotia Mill.

25.     The liquidation of Palco will also harm Scopac because Scopac's primary customer, Palco, who purchases most of Scopac's logs, will no longer be in the market. This will result in an oversupply of logs in the marketplace and a corresponding reduction in price of logs. Scopac's revenues will be negatively impacted because there is inadequate alternative processing capacity within the region to process the additional logs that will be on the market if Palco is out of business.

26.     Even if the MRC/Marathon Plan is ultimately consummated following an appeal, potential harm exists due to, among other things, increases in interest rates, decline in the value of homes in Scotia, loss of customers or key employees, additional

11

bankruptcy costs or the decline in value of auction rate securities.

27.     When balancing this potential harm against the potential harm to the Noteholders, the only harm to the Noteholders is the difference in value between the $513.6 million they will receive if the plan is consummated, and some higher value they allege might be achievable in a subsequent marketing attempt. Such value itself is speculative because the Noteholders' interest is the right to foreclose the property. Without a stay, the Noteholders receive $513.6 million – the value of their secured claim as found by this Court after a lengthy trial on valuation. On the other hand, even if they win their appeal, there is substantial evidence to suggest that the foreclosure value is far below the amount they will receive under the MRC/Marathon Plan.

### (d) The Public Interest

28.     The public interest weighs strongly against a stay pending appeal. The State of California, California's wildlife and forestry agencies, the federal wildlife agencies, numerous other federal, state, county and local government agencies, editorials in five Northern California newspapers and local residents all support confirmation of the MRC/Marathon Plan.   The MRC/Marathon Plan ensures that an experienced and environmentally conscious timber operator will run the Palco and the Scopac Timberlands in accordance with the applicable government regulations.  This is particularly important given the contentious environmental history of the Scopac Timberlands and because there are currently environmental violations on the Scopac Timberlands and millions of dollars of backlogged roadwork that must be completed to comply with existing regulations.  In addition, the proper running of the town of Scotia, its schools, churches, water facilities, the power plant and sewage treatment operations, will all be at risk if the MRC/Marathon

Plan is not promptly consummated, not to mention the significant loss of jobs in the Town of Scotia.

29.      In his first letter to the Court, Governor Schwarzenegger implored that, in addition to one of the Debtors' duties to the State of California under the historic 1999 Headwaters Forest Agreement, the Debtors' successful reorganization was important to his constituents because the reorganization should: (i) preserve the timberlands by maintaining a level of commercial harvest that will ensure sustainable, high-quality timber production over the long term while preserving and enhancing watershed and wildlife protection; (ii) minimize adverse impacts to the local economy and preserve as many local employment opportunities as possible; (iii) maximize the greenhouse gas reduction benefits that could be generated in timberland management. [Dkt. No. 2201]. In the Statement of Position of U.S. Congressman Mike Thompson [Dkt. No. 2335] he stated that '[t]he timberlands and other assets held by [debtors] represent a unique public trust for citizens of California and the nation." U.S. Senator Dianne Feinstein [Dkt. No. 2312] acknowledged that the 1999 Habitat Conservation Plan that operates in conjunction with the Headwaters Agreement provides for public ownership of thousand of acres of timberlands, protection of the Marbled Murrelet conservation Areas and other public resources which should be considered throughout the Debtors' bankruptcy cases.

30.      Further, the federal wildlife agencies expressed significant concern regarding the Debtors' environmental monitoring during the course of any stay pending appeal and made clear that if consummation of the MRC/Marathon Plan is not effectuated, environmental risks will be exacerbated.  Thus, a stay pending appeal will substantially and negatively impact the public interest.

31.     No evidence was presented that denial of a stay pending appeal would impact the securitization market.

32.     In sum, the Indenture Trustee has not met its burden to establish the four elements for a stay pending appeal.  Further, balancing the equities discussed above militates against a stay pending appeal.  Therefore, the Indenture Trustee's motion for a stay pending appeal is denied.

### Bond for a Stay Pending Appeal

33.     Even if the Indenture Trustee were able to satisfy all parts of the four-part test for a stay pending appeal, this Court would condition a stay pending appeal on the Indenture Trustee providing some security for potential damages caused by the delay in consummating the MRC/Marathon Plan as a result of a stay, or possible collapse of the MRC/Marathon Plan caused by such a stay.  At the stay hearing, the Court suggested requiring the Indenture Trustee to reduce its $513.6 million cash distribution under the MRC/Marathon Plan by the amount of any damages resulting from a stay pending appeal in lieu of a bond.  The Indenture Trustee advised the Court that its proposal is not possible because it  violates the Indenture.

34.     Two kinds of risk must be protected in this case. First, the continued viability and operation of the debtors must be protected. All parties agree that some extraordinary program is required to allow these debtors to survive more than even ten days. Without additional cash, both Scopac and Palco would have to shut down immediately. To protect the debtors, the Indenture Trustee proposes a DIP facility for Scopac plus a free log program, the so-called "discount log program" for Palco. That proposal alone is insufficient protection. A DIP facility for Palco, subordinate to all other

secured creditors in the Palco case, is necessary for its continued operations. The discount log program alone is insufficient to guarantee Palco's survival. Moreover, an independent opinion by securities counsel is necessary to assure that the Indenture Trustee's proposal does not violate the provisions of the Trust Indenture.

35.     Second, a bond is necessary to protect appellees in the event that, even if the Indenture Trustee loses on appeal, the deal offered by MRC/Marathon may be gone at the end of the appellate process because of the length of time which will pass.

36.     Accordingly, if this Court were to grant a stay pending appeal, it would require that the Indenture Trustee to insure the continued operation of both debtors during the appeal with the DIP facilities and the discount log program and post a bond in an amount sufficient to protect the various parties in interest from the risks caused by a stay pending appeal. A bond must be set at or near the full potential harm to other parties in interest.

37.     Bankruptcy Rule 8005 provides, in relevant part:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance...[T]he bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest....

- - F.ed R. Bankr. P. 8005.

38.     By its terms, Bankruptcy Rule 8005 does not require posting a supersedeas bond in order to obtain a stay pending appeal. *See In re Texas Equip. Co., Inc.*, 283 B.R. 222, 229 (Bankr. N.D. Tex. 2002). Rather, as noted above, the rules only state "that the court may stay its judgment 'on such terms as will protect the rights of all the parties in interest.'" *Id.* (quoting Fed. R. Bankr. P. 8005). Consequently, "rule 8005 is by

15

design a flexible tool which permits a bankruptcy court to uniquely tailor relief to the circumstances of the case, so that the appellate process will neither undo nor overwhelm the administration of the bankruptcy case." *In re Gleasman*, 111 B.R. 595, 599 (Bankr. W.D. Tex. 199); *accord Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F. 2d 1189, 1191 (5th Cir. 1979)(acknowledging that the court may depart from the usual requirement of a full supersedeas bond).

39.     "The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal." *In re Texas Equip. Co., Inc.*, 283 B.R. at 229 (citing *Poplar Grove Planting & Ref. Co., Inc.*, 600 F.2d at 1190-91). Thus, "the bond secured the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *Id.* (quoting *Poplar Grove Planting & Ref. Co., Inc.*, 600 F.2d at 1191).

### The Indenture Trustee's Proposal is Inadequate

40.     In response to the risks discussed above, the Indenture Trustee has offered a DIP facility and "discount log program" designed to keep the debtors afloat during the appeal.

41.     The DIP facility and "discount log program" proposed by the Indenture Trustee will not eliminate the significant risks to other parties resulting from a stay pending appeal.  This is true for a number of reasons, including, but not limited to, the following:

- The $25 million proposed DIP facility is insufficient to finance either of the Debtors during the entire potential course of an appeal, which could take over a year;

- The discounted logs Scopac proposes to offer Palco is only for six months and an appeal could last much longer;

- Even with the receipt of discounted logs, Palco will not be able to pay its currently accrued and unpaid or all future professional fees, which shall continue to accrue;

- The program fails to explain how Palco could expect to obtain the services of legal counsel for such an extended period of time in the absence of ongoing payment or a reasonable likelihood of payment in the near future;

- Even with the receipt of discounted logs, Palco will not be able to pay the accrued and unpaid DIP interest owing to Marathon, or the $75 million DIP obligation that will become due and payable to Marathon in August;

- Even with the receipt of discounted logs, Palco will continue to be unprofitable and will continue to be severely hampered by a continuation of its critical shortage of operation cash flow. Any stay pending appeal should be conditioned on the Indenture Trustee providing a DIP facility to Palco in the amount of at least $5 million subordinate to the Palco secured debt, to ensure continued operations during appeal;

- Scopac will lose substantial amounts of money by providing discounted logs to Palco;

- The proposal may violate the Scopac Indenture.  Because the proposal requires the DIP facility to be paid out of the Indenture Trustee's $513.6 million recovery under the MRC/Marathon Plan, it impairs the Noteholders and, thus, the Indenture requires 100% agreement by the Noteholders.  There was no evidence that such consent has been received. Any stay pending appeal should be conditioned upon the Noteholders providing independent securities counsel opinion that the DIP facilities and the discount log program do not violate the Indenture; and

- The Indenture Trustee's proposal provides no protection to creditors, other parties in interest and the public interest from the risk that the MRC/Marathon Plan will not be consummated due to a stay pending appeal.

42.    The only protection the Indenture Trustee offered to insure the possibility that the MRC/Marathon Plan would still be viable at the conclusion of the appeal was to offer MRC a purported bridge facility from Beal Bank. The purported bridge

facility from Beal Bank to MRC is conditioned on a stay pending appeal and bond or other security acceptable to Beal Bank in its sole discretion and, thus, is not a firm commitment. Even if the Beal Bank bridge facility was without any conditions, there is no reason to believe MRC would be interested in borrowing money from Beal Bank after a six-month adversarial relationship. Further, the Beal Bank proposal does nothing to address the exposure MRC faces to interest rate changes.

43.     In the more customary appeal of a monetary judgment, the Fifth Circuit Court of Appeals instructs that the amount of the supersedeas bond should "include the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay." *Id.* Where the judgment res is non-monetary, however, as with real property, "[t]he fact that the judgment concerns real property does not relieve the appealing party of the burden to provide a supersedeas bond or its equivalent." *Id.* (citing *United States. V. Route 7, Box 7091, Chatsworth Ga.*, 1997 WL 412477 *2 (N.D. Ga. 1997), *aff'd* 117 F.3d 1433 (11th Cir. 1997), *cert. den.* 528 U.S. 950 (1999). The value of the property, however, "is not considered the 'amount of the judgment' and is not included in the amount of the supersedeas bond." *Id.; Gleasman*, 111 B.R. at 604.

44.     In determining the appropriate amount of the bond, this Court considered the risk that the MRC/Marathon Plan would not be consummated as a result of a stay pending appeal and the impact on various parties in interest.   This Court also considered that the Indenture Trustee did not assert that the Noteholders would be unable to post a bond in an amount of several hundred million dollars or that the requirement of a bond would cause any undue hardship to the Noteholders.   There is no dispute that the Noteholders have adequate capital to post a substantial bond.   The Indenture Trustee and

18

Noteholders overwhelmingly consist of sophisticated financial investors that are well capitalized. The Noteholders only asserted that a large bond would be a target for future damage claims that may not be meritorious. The very purpose of a bond is to ensure payment of actual damages suffered as a result of a stay and this Court will ensure that any such damage claims receive a fair and appropriate hearing. Moreover, to the extent that there is a risk of potentially increased litigation, this is a risk that the Indenture Trustee and Noteholders must incur if they want a stay pending appeal.

      45.    This Court believes that the appropriate amount of a bond for any stay pending appeal of the Confirmation Order is $176 million. This amount is based on the evidence before the Court and is calculated as follows:

- $10.6 million due unsecured creditors under MRC/Marathon Plan

- $ 0.5 million funding of the Litigation Trust under MRC/Marathon Plan

- $28.5 million claim of PBGC satisfied under MRC/Marathon Plan

- $11.6 million estimated accrued and unpaid administrative and priority claims paid under MRC/Marathon Plan (appellees argued this amount should be $26.6 million, however the DIP facility pays approximately $15 million of these claims)

- $ 6.3 million in additional administrative claims incurred during a stay

- $1.0 million estimated employee bonus plan compensation

- $44.0 million estimated reduction of Palco going concern to liquidation value (this amount is reduced from the $88 million requested because the court is not prepared to find the difference in value to be as high as argued by MRC/Marathon)

- $9.5 million for backlogged road work and potential regulatory Fines (reduced from $14.5 million requested by

MRC/Marathon because the DIP budget includes $5 million in roadwork)

- $29.0 million in risk to MRC of increased interest rate of 100 basis points during pendency of appeal (at present value over a 14 year loan) (reduced from original request of $86 million based on a maximum 300 basis points increase in interest during pendency of appeal because any amount over 100 basis points would be speculative.)

- $141.0 million total

46.     In determining an amount of a bond, courts often multiply the estimate of actual damages by 125% or 150% to account for additional unforeseeable risk. Such additional bond is necessary in this case due to the risks to operations, the environment, the employees and the town economy from a stay pending appeal. Further, there is additional risk because during the pendency of the appeal, current management intends to harvest more redwood inventory than MRC would harvest if it were operating the Timberlands, thereby impacting MRC's business plan. There also exists the risk of decline in value of the auction rate securities. Further, a key employee has recently left and there is the risk of loss of other employees and customers. Multiplying the $141 million by 125% totals approximately $176 million.

47.     Accordingly, if the Court were to grant a stay pending appeal, it would condition such a stay on the Indenture Trustee agreeing to provide a $25 million DIP facility for Scopac, a $5 million DIP facility for Palco subordinate to the Palco secured debt, the discount log program, a securities opinion that the DIP facilities and discount log program do not violate the Indenture, and posting a bond in the amount of $176 million.

20

**Direct Appeal**

48.    Pursuant to Section 1233 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress amended the Bankruptcy Code by streamlining bankruptcy appeals to provide for a fast-track access to the Untied States Courts of Appeal. Enacting 28 U.S.C. §158(d), which works in conjunction with Rule 8001(f) of the Interim Federal Rules of Bankruptcy Procedure, Congress provided that, upon consensual certification of the parties or certification by the relevant Bankruptcy Court or District Court, an appeal may be taken directly to the relevant United States court of Appeals, if any of three circumstances exist: (i) the judgment, order, or decree involves a question of law as to which there is not controlling decision of the court or appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.... 28 U.S.C. §158(d)(2)(A); *see also In re Scotia Pac. Co., LLC,* 508 F.3d 214, 219 n.4 (5th Cir. 2007). Thus, '[t]he focus of the statute is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation." *Weber v. U.S.,* 484 F.3d 154, 158 (2d Cir. 2007).

49.    Certification is mandatory where this Court determines that any of the three circumstances exists. Id. 11 U.S.C. §158(d)(2)(B) ("If the. . . court . . . determines that a circumstance specified in the clause (i), (ii), or (iii) of subparagraph (A) exists . . . then the . . . court shall make the certification described in subparagraph (A)."

50.    While only one of the three circumstances under §158(d) must be present

to mandate certification, two are present here.

51.     First, the Confirmation Order adjudicates issues of mammoth public importance. Among other things, the Confirmation Order potentially impacts the economies of Humboldt Count, the town of Scotia, California and the State of California, the preservation and maintenance of one of the nation's most ecologically diverse forests, greenhouse gas reduction effects, and a host of other ancillary environmental concerts. Accordingly, Arnold Schwarzenegger, Governor of the State of California, has tendered two letters probative of his strong interest in the Debtors' successful reorganization [Dkt. Nos. 2201 and 2601]. Moreover, no less than two members of congress –Senator Dianne Feinstein [Dkt. No. 2312] and U.S. Representative Mike Thompson [Dkt. Nos. 2598 and 2335] and the Greater Eureka Chamber of Commerce [Dkt. No. 2529] have personally written to the Court expressing support of the MRC/Marathon Plan. Signals of interest of this magnitude are unprecedented, even in major Chapter 11 bankruptcy cases. Therefore, in light of the multitude of important public issues affected by the Confirmation Order, which will have an impact on a host of communities, this Court finds that is should certify the Indenture Trustee's appeal to the Fifth Circuit Court of Appeals. *See, e.g., In re Virissimo*, 332 B.R. 208, 209 (Bankr. D. Nev. 2005).

52.     Second, an immediate appeal from the Confirmation Order will materially advance the progress of the debtors' cases. The debtors and the creditors, including the Indenture Trustee, all deserve the finality of either realizing the debtors' rehabilitation, reorganization and/or liquidation in accordance with the principles of the Bankruptcy Code. In this case, plan confirmation represents the paradigmatic conclusion of the antagonistic and acrimonious disputes that marked the debtors' bankruptcy proceedings. Courts reason that where a bankruptcy court has made a ruling which will essentially determine the result of future

litigation, immediate review should be granted. *Weber v. U.S.*, 484 F.3d 154, 158 (2d Cir. 2007) (acknowledging that if adversely affected parties might "very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear," immediate review is advisable). Importantly, in *In re Ransom*, 380 B.R. 809, 812-13 (B.A.P. 9th Cir. 2007), a case involving a Section 158(d)(2) request in which the bankruptcy court denied confirmation of the debtor's chapter 13 plan, the court concluded that 'if the court of appeals agrees with [the debtor] and disagrees with the bankruptcy court and with us, then [the debtor] should be able to obtain confirmation of his plan, materially advancing to conclusion the challenges to that plan." In this case, the same conclusion applies to the Indenture Trustee. Thus, plan confirmation is recognized as materially advancing a case to its conclusion. Therefore, the Indenture Trustee's request for direct certification should be granted so that the parties can gain closure regarding the Confirmation Order.

**Conclusion**

A separate Order shall be entered denying the Indenture Trustee's Motion for Stay Pending Appeal Court of Appeals, but staying finality of the Confirmation Order until July 25, 2008, to allow the Indenture Trustee to seek further relief from the Fifth Circuit Court of Appeals. A separate Order Granting the Petition for Direct Appeal to the Fifth Circuit shall also be entered.

Dated:  July 15, 2008

RICHARD S. SCHMIDT
United States Bankruptcy Judge

23