IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Case No. 07-20027-C-11** |
| **SCOTIA DEVELOPMENT, LLC, et al.,** | § | **Jointly Administered** |
| | § | **(Chapter No. 11)** |
| Debtors. | § | |

---

**THE INDENTURE TRUSTEE'S MOTION FOR LEAVE TO APPEAL
PURSUANT TO 28 U.S.C. § 158(a) AND RULE 8003 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE[1]**

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TEN (10) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREED OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee for the Timber Notes (the "Indenture Trustee"), files this Motion for Leave to Appeal Pursuant to 28 U.S.C. § 158(a) and Rule 8003 of the Federal Rules of Bankruptcy Procedure ("Motion for Leave to Appeal"), which seeks any necessary permission to appeal: (i) the "Stipulated Order"

---

[1] Contemporaneously herewith, the Indenture Trustee has filed a Notice of Appeal of the Orders (defined herein). *See* App. BB.

relating to the Emergency Motion for Contempt filed by Consolidated-Debtor The Pacific Lumber Company [Dkt. No. 3464] (the "<u>Stipulated Order</u>"), signed and entered by the Honorable Richard S. Schmidt of the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "<u>Bankruptcy Court</u>"), on July 29, 2008, in the above-captioned case;[2] (ii) the "Order on Emergency Motion to Enforce Confirmation Order and Other Miscellaneous Relief" [Dkt. No. 3452] (the "<u>Enforcement Order</u>"), signed and entered by the Bankruptcy Court, on July 28, 2008, in the above-captioned case[3] (the Stipulated Order and together with the Enforcement Order are hereinafter referred to as the "<u>Orders</u>"); and (iii) any and all related findings of fact and conclusions of law, orders, supplements and amendments whether entered before, contemporaneous with or after the Orders.  In support of the Motion for Leave to Appeal, the Indenture Trustee respectfully states as follows:

## I.     <u>PRELIMINARY STATEMENT</u>

1.     On July 24, 2008, the United States Court of Appeals for the Fifth Circuit accepted appellate jurisdiction over the above-captioned bankruptcy case pursuant to a certification for direct appeal from the Bankruptcy Court and a petition for permission to appeal. The Fifth Circuit recognized the urgency of the Indenture Trustee's appeal of the order confirming the plan of reorganization in this bankruptcy case and granted the Indenture Trustee's petition for permission to appeal on an expedited basis.

2.     Although the Bankruptcy Court was informed of these developments through, *inter alia*, presentations by counsel and written electronic notices from the Fifth Circuit's Clerk, and therefore knew it had been divested of jurisdiction, it nonetheless entered the Enforcement Order and the Stipulated Order on  July 28 and July 29, 2008, respectively.  The entry of the

---

[2] A true and correct copy of the Stipulated Order is attached hereto as "<u>App. A.</u>"
[3] A true and correct copy of the Enforcement Order is attached hereto as "<u>App. B.</u>"

Orders effectively modified the judgment already on appeal and radically changed the confirmed reorganization plan already under review by the Fifth Circuit.  The Bankruptcy Court has also purported to order parties to immediately transfer property, execute transaction documents and to otherwise make operational the challenged reorganization plan.  The Indenture Trustee seeks an appeal of the Orders.

3.     Although the Indenture Trustee maintains that the Orders are final orders, and therefore appealable, the Indenture Trustee files this Motion out of an abundance of caution should the Court determine that the Orders are interlocutory.  Leave should be granted because, the appeal meets the requirements of 28 U.S.C. § 1292(b) in that controlling questions of law regarding the Bankruptcy Court's jurisdiction and its interpretation of the plan of reorganization are involved, which present substantial grounds for difference of opinion.  Further, this Court's resolution of these issues will materially advance the litigation.  Alternatively, the Orders meet the requirements of the collateral order doctrine.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

4.     In 1998, Scotia Pacific Company LLC ("Scopac") was established as a separate company to take ownership of the timberland holdings of The Pacific Lumber Company ("Palco") and certain other affiliated companies "to facilitate the sale of certain collateralized notes . . . (the "Timber Notes")."  *See* IT Exhibit 128 at ¶ 5, App. C ("First Day Affidavit of Gary L. Clark").  This approach of creating a separate corporate entity was employed to obtain financing on terms and conditions that would otherwise have been unavailable had the timber assets remained combined with those of Palco in a single entity.

5.     After Scopac was formed, it issued Timber Notes in the initial aggregate principal amount of approximately $870 million, secured by essentially all of Scopac's assets, including its real estate and timber.  Approximately $714 million in principal and $26 million in interest

(*i.e.,* a total of $740 million) was outstanding on the Timber Notes as of the Petition Date (defined below). The Bank of New York Trust Company, N.A. serves as the Indenture Trustee and Collateral Agent for the holders of the Timber Notes (the "Timber Noteholders") pursuant to that certain Indenture dated July 20, 1998, by and between Scopac and State Street Bank and Trust Company.

6.    On July 18, 2006, The Pacific Lumber Company ("Palco") and Britt Lumber Co., Inc. ("Britt") entered into a Term Loan Agreement with Marathon Structured Finance Fund L.P. ("Marathon") pursuant to which Marathon loaned Palco and Britt $85 million (the "Palco Term Loan Agreement"). Palco and Britt also entered into a Revolving Credit Agreement with Marathon, pursuant to which Marathon provided Palco and Britt a $60 million revolving line of credit ("Palco Revolving Credit Facility") (collectively with the Palco Term Loan Agreement, the "Pre-Petition Loans"). [MMX 7], App. D. These Pre-Petition Loans were secured by senior security interests in substantially all of Palco's assets other than Palco's equity interest in Scotia Pacific Company LLC ("Scopac"), including the stock of Palco owned by MAXXAM Group, Inc. ("MGI"). [MMX 2 ¶ 4], App. E; (Tr. 4/8/08 188:15-189:8). Although the Pre-Petition Loans were not secured by Palco's equity interest in Scopac, Marathon was given a negative pledge over the Scopac stock owned by Palco. (Tr. 4/8/08 188:22-189:5), App. F. Palco owns 100% of Scopac's stock. [MMX 35 at 22], App. G.

7.    On January 18, 2007, Scopac, Palco, Scotia Development Company LLC, Britt, Salmon Creek LLC and Scotia Inn Inc. (collectively the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

8.      On January 30, 2008, after the Bankruptcy Court entered its Order Terminating Exclusivity and Establishing Dates for Filing of Plans of Reorganization and Disclosure Statement (the "Order Terminating Exclusivity"), *see* [Dkt. No. 2004], App. H, MRC and Marathon filed their Joint Plan of Reorganization for the Debtors (the "Original MRC/Marathon Plan") [Dkt. No. 2206], App. I.[4]   On May 14, 2008, MRC and Marathon, joined by the Committee as a Plan Proponent, filed their First Amended Joint Plan of Reorganization, as Further Amended (the "MRC/Marathon Plan") [Docket No. 2902], App. L.

9.      On March 31, 2008, Kathleen M. Logan, as Balloting Agent, filed her Declaration Certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting the Respective Plans of Reorganization Proposed by (1) Mendocino Redwood Company, LLC and Marathon Structured Finance Fund LP; (2) The Bank of New York Trust Company, N.A., Indenture Trustee for the Timber Notes; and (3) the Debtors and Maxxam Inc., Maxxam Group Holding Inc., and Maxxam Group Inc. [Dkt No. 2581], App. M (the "Balloting Agent's Declaration").

10.     On April 4, 2008, the Indenture Trustee filed its Objection to the Confirmation of the First Amended Joint Plan of Reorganization for the Debtors Proposed by Mendocino Redwood Company, LLC and Marathon Structured Finance Fund L.P. (the "Confirmation Objection") [Dkt. No. 2614], App. N.

---

[4] At a hearing on February 5, 2008, the Bankruptcy Court requested that the Official Committee of Unsecured Creditors (the "Committee") work with MRC, Marathon and the proponents of the competing plans of reorganization and liquidation that had been filed in the Bankruptcy Court to formulate a joint disclosure statement for all plans.  On February 25, 2008, the Committee filed a Joint Disclosure Statement in Support of the Respective Plans of Reorganization Proposed by (1) the Indenture Trustee; (2) MRC and Marathon; and (3) the Debtors and Maxxam, Inc., Maxxam Group Holdings Inc. and Maxxam Group Inc. (the "Joint Disclosure Statement") [Dkt. No. 2353], App. J.  On February 29, 2008, the Bankruptcy Court entered its Order Approving Joint Solicitation Procedures And Joint Disclosure Statement in Support of the Respective Plans of Reorganization Proposed by (1) The Bank Of New York Trust Company, N.A. Indenture Trustee for the Timber Notes; (2) Mendocino Redwood Company, LLC and Marathon Structured Finance Fund L.P.; and (3) the Debtors and Maxxam Inc., Maxxam Group Holdings Inc., and Maxxam Group Inc. (the "Joint Disclosure Statement Approval Order") [Dkt. No. 2387], App. K.

11.     From April 8, 2008 through April 11, 2008, the Bankruptcy Court held a Confirmation Hearing with respect to the plans of reorganization that had been filed by the various parties to the Debtors' cases.  The Confirmation Hearing resumed on April 29, 2008 and continued through May 2, 2008.  The Bankruptcy Court held closing arguments on May 15, 2008.  Following amendments to certain plans that took place in the course of the Confirmation Hearing and other developments, the Bankruptcy Court had before it two competing Plans for Scopac:

(a)     First Amended Chapter 11 Plan for Scotia Pacific Company LLC proposed by Bank of New York Trust Company, N. A., Indenture Trustee for the Timber Notes *(as modified May 20, 2008)* (the "Indenture Trustee Plan") [Dkt. 2997- Ex. A], App. O; and

(b)     First Amended Joint Plan of Reorganization for the Debtors, as modified, proposed by Mendocino Redwood Company, LLC, Marathon Structured Finance Fund L.P. and the Official Committee of Unsecured Creditors (the "MRC/Marathon Plan") [Dkt. No. 2800], App. P.

12.     On June 6, 2008, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law Regarding (a) Confirmation of MRC/Marathon Plan (b) Denial of Confirmation of the Indenture Trustee Plan and (c) Denial of the Motion to Appoint a Chapter 11 Trustee (the "Findings and Conclusions") [Dkt. No. 3088], App. Q.  Therein, the Court stated that it would sign an order confirming the MRC/Marathon Plan if its proponents would make the following three amendments to the Plan and its proposed confirmation order:

First, the Plan must provide for the retention of whatever lien the Noteholders have on the Headwaters Litigation.  Second, the Plan must provide for separation of any recovery from litigation in the Litigation Trust which belongs to Scopac for the benefit of Scopac unsecured creditors.  Third, the Plan must guarantee the payment of $510 million for payment of the Class 6 Secured Timber Noteholder debt.

Findings and Conclusions at pg. 9, App. Q.

13.     On June 13, 2008, the Bankruptcy Court held a hearing (the "Continued Confirmation Hearing") with respect to, *inter alia,* the amendments to the proposed confirmation order.

14.     On July 8, 2008, the Bankruptcy Court entered the Judgment and Order (I) Confirming First Amended Joint Chapter 11 Plan of Reorganization for the Debtors, as Further Modified, with Technical Amendments, Proposed by Mendocino Redwood Company, LLC, Marathon Structured Finance Fund, LP and Official Committee of Unsecured Creditors, (II) Denying Confirmation of Indenture Trustee Plan, (III) Denying Motion to Appoint Chapter 11 Trustee (the "Confirmation Order") [Dkt. No. 3302], App. R.

15.     The MRC/Marathon Plan proposes to "transfer" the newly-integrated timberland and sawmill operations into a new entity, referred to as Newco, [MMX 77, App. S; MMX 1, App. T ¶ 23; MMX 2 ¶ 9, App. E], for $580 million in cash.  [MMX 77 § 4.6.2.1, App. S]. Under the MRC/Marathon Plan, $7.5 million of these funds will be used to improve the operations of the Palco mill.  [MMX 1 ¶ 28, App. T].

16.     Palco and Britt owe Marathon approximately $85 million pursuant to the Palco Term Loan Agreement, plus accrued interest.  (Tr. 4/8/08 226:24-227:11), App. F.  In addition, the Palco Debtors owe Marathon approximately $75 million pursuant to the Palco DIP Loan, plus accrued interest.  (Tr. 4/8/08 226:24-227:11) *Id.*, App. F.  Thus, there is in excess of $160 million of senior secured pre-petition and post-petition debt owed to Marathon, which under the MRC/Marathon Plan, Marathon will convert into equity.  [MMX 1 ¶ 24, App. T; MMX 2 ¶¶ 6, 10, App. E].  In exchange, Marathon will receive a 15% equity stake in Newco, a 100% equity stake in Townco (defined below) and a promissory note from Newco in the aggregate principal

amount equal to the amount of the Mill Working Capital and secured solely by liens on the Mill Working Capital. [Docket No. 2902]. App. U. MRC will manage Newco.

17.     The MRC/Marathon Plan also proposes to restructure the town of Scotia, which Palco currently owns, by forming an entity referred to as Townco. [MMX 1 ¶ 24, App. T; MMX 2 ¶ 9, App. F]. Townco will allow its residents to purchase their homes. [MMX 1 ¶ 24, App. T; MMX 2 ¶¶ 9, 10, App. F].

18.     Certain of the Debtors' litigation assets will be pursued by a litigation trust for the benefit of the unsecured creditors (the "Litigation Trust"). [MMX 1 ¶ 24, App. T; MMX 2 ¶ 10, App. E]. The MRC/Marathon Plan provides $500,000 in seed money for this Trust. [MMX 77 Article VIII, App. S].

19.     Importantly, while the trade creditors are projected to receive approximately $10.6 million in cash or 75%-90% of their claims and will be eligible for further distributions based on recoveries by the Litigation Trust, in which they will share *pro rata* with holders of Scopac General Unsecured Claims, [MMX 77 §§ 4.7, 4.8, 4.9, App. S; MMX 1 ¶ 24, App. T; MMX 2 ¶ 10, App. E], the Indenture Trustee will receive only $530 million in cash (less an adjustment) on account of its secured claim. Thus, compared to the debt on the Petition Date— $740 million, which does not include growth of the debt in the intervening year, the Indenture Trustee will be left with a several hundred million dollar, unsecured deficiency claim against the estate. The MRC/Marathon Plan also claims that the Indenture Trustee will be eligible for potential additional recoveries from the Litigation Trust on account of its unsecured deficiency claims. [MMX 77 §§ 4.6.2.1, 4.9.2, App. S].

20.     On July 9, 2008, the Indenture Trustee filed a notice of appeal of the Confirmation Order. *See* Dkt. No. 3304, App. AA. The Indenture Trustee also sought direct

certification of its appeal of the Confirmation Order to the Fifth Circuit, *see* Dkt. No. 3308, App. V, which was granted by both the Bankruptcy Court and the Fifth Circuit.  *See* Dkt. Nos. 3382, App. W, and 3488, App. X.  The Indenture Trustee's appeal of the Confirmation Order remains pending in the Fifth Circuit.

21.    Notwithstanding the fact that the Fifth Circuit granted the Indenture Trustee's motion for a direct appeal and expedited the appeal, the MRC/Marathon Plan Proponents filed an Emergency Motion for Order to Enforce Confirmation Order and Other Miscellaneous Relief (the "Motion for Enforcement") in the Bankruptcy Court, just before midnight, on July 24, 2008, wherein they purported to seek an order directing the Debtors to comply with the Confirmation Order and to consummate the MRC/Marathon Plan.  *See* Dkt. No. 3442 - App. Y.  Leaving the Indenture Trustee with just moments to prepare any type of written response to the MRC/Marathon midnight filing, the Bankruptcy Court held hearings on the morning of July 25, 2008, centered around MRC/Marathon's request that the Bankruptcy Court issue declaratory relief.

22.    On July 28, 2008, the Bankruptcy Court entered the Enforcement Order, wherein it ruled that, although it retained jurisdiction to adjudicate the Motion for Enforcement, it would deny the relief requested in the Motion for Enforcement without prejudice.  Notably, however, the Court threatened that any party that failed to abide by the Confirmation Order's terms risked contempt.  App. B at ¶ 9.

23.    On July 29, 2008, Palco and the MRC/Marathon Plan Proponents filed an Emergency Motion for Contempt, wherein they sought an order holding the Scopac Debtors and their officers and directors in contempt for failure to execute the documents required by the

MRC/Marathon Plan and to take steps necessary to consummate the terms and conditions of the MRC/Marathon Plan.  Dkt. No. 3460 -  App. Z.

24.     On July 29, 2008, the Bankruptcy Court signed and entered the Stipulated Order.  *See* Dkt. No. 3464 – App. A.   Therein, Scopac agreed that its officers and directors would execute the documents required by the MRC/Marathon Plan and take the steps necessary to consummate the terms and conditions of the MRC/Marathon Plan.

## III.     RELIEF REQUESTED & ISSUES ON APPEAL

25.     To the extent that the Court determines that the Orders are interlocutory and not final,[5] the Indenture Trustee requests that this Court grant the Indenture Trustee leave to appeal the Enforcement Order and the Stipulated Order to resolve the following questions:

> ➢ Whether the bankruptcy court retained jurisdiction to adjudicate the relief requested in the Motion for Enforcement and the Emergency Motion for Contempt.

> ➢ Whether the MRC/Marathon Plan Proponents' actions to consummate the Plan violated the Plan because, under the Plan's unambiguous provisions,

---

[5] The Indenture Trustee maintains that the Orders are final orders, and therefore appealable.   Consequently, the Indenture Trustee files this Motion in the event that the Court disagrees and determines that the Orders are interlocutory.   With regard to the finality requirement, the Fifth Circuit has emphasized that

> [i]n order to be final in character, an order by a bankruptcy court must resolve a discrete unit in the larger case. The character of the bankruptcy court's order determines whether appeal is available as of right to the district court. A final order must "conclusively determine substantive rights."

*Path-Science Labs. v. Greene County Hosp. (In re Greene County Hosp.)*, 835 F.2d 589, 595 (5th Cir. 1988) (quoting *In re Delta Servs. Indus.*, 782 F.2d 1267, 1271 (5th Cir. 1986)).

Because the Orders direct Scopac, its Board of Directors, officers, directors, employees and agents to "direct, authorize, execute and deliver any and all applicable transfer documents or other documents in connection with consummation of the MRC/Marathon Plan and the transactions contemplated therein that are reasonably requested by the plan proponents" and to "take all other measures reasonably required to consummate the MRC/Marathon Plan," the Orders are necessarily final, in that they purport to resolve a discrete unit in the larger case—consummation of the MRC/Marathon Plan.  That is to say, because the Debtor has been charged to undertake the actions necessary for consummation, the Orders purport to conclusively determine the parties' substantive rights with regard to the estate's property and the Indenture Trustee's collateral.  In sum, the Orders are final and appealable.

the "Effective Date" has not occurred because appeals of the Confirmation

Order are still pending.

## IV.    CAUSE EXISTS FOR THIS COURT TO GRANT LEAVE TO APPEAL

**A.    The Appeal Meets the Requirements of 28 U.S.C. § 1292(b).**

26.    Title 28 U.S.C. § 158 provides parties in bankruptcy cases with the ability to

appeal to the district court. 28 U.S.C. § 158.  Specifically, section 158 provides that "[t]he

district courts of the United States shall have jurisdiction to hear appeals . . . from final

judgments, orders, and decrees . . . with leave of the court, from other interlocutory orders and

decrees." *Id.*[6]

27.    "The decision to grant or deny leave to appeal a bankruptcy court's interlocutory

order is committed to the district court's discretion."  *Stumpf v. McGee (In re O'Connor)*, 258

F.3d 392, 399-400 (5th Cir. 2001).

28.    "The Fifth Circuit has not definitively decided whether the criteria of 28 U.S.C. §

1292(b), which governs appeals for interlocutory orders from district court orders to courts of

appeals, is applicable to interlocutory appeals under § 158(a), but it has recognized that most

lower courts use this standard."  *Tile Outlet, Inc. v. Official Comm. of Unsecured Creditors of*

*Tile Outlet, Inc. (In re Tile Outlet, Inc.)*, No. 05-80340, 2006 WL 1716125, at *6 (S.D. Tex. June

---

[6] In relevant part, Rule 8003 of the Federal Rules of Bankruptcy Procedure, which enumerates the procedural requirements for filing a motion for leave to appeal, provides:

(a) Content of motion; answer.
A motion for leave to appeal under 28 U.S.C. § 158(a) shall contain: (1) a statement of the facts necessary to an understanding of the questions to be presented by the appeal; (2) a statement of those questions and of the relief sought; (3) a statement of the reasons why an appeal should be granted; and (4) a copy of the judgment, order, or decree complained of and of any opinion or memorandum relating thereto. Within 10 days after service of the motion, an adverse party may file with the clerk an answer in opposition.
(b) Transmittal; determination of motion.
The clerk shall transmit the notice of appeal, the motion for leave to appeal and any answer thereto to the clerk of the district court or the clerk of the bankruptcy appellate panel as soon as all parties have filed answers or the time for filing an answer has expired. The motion and answer shall be submitted without oral argument unless otherwise ordered.

FED R. BANKR. P. 8003(a), (b).

16, 2006) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1176-77 (5th Cir. 1991).

29.     Section 1292(b) provides in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).  *See also  Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007) ("Title 28, § 1292(b) of the United States Code permits a court to certify an interlocutory appeal where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation.").  Courts have emphasized that "a controlling question of law-although not consistently defined-at the very least, means a question of law the resolution of which could materially advance the ultimate termination of the litigation-thereby saving time and expense for the court and the litigants."  Similarly, courts have found substantial ground for difference of opinion where

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*DuPree v. Kaye*, No. 3:07-CV-0768-B ECF, 2008 WL 294532, at *3 (N.D. Tex. Feb. 4, 2008) (citing 24 AM. JUR. 2d *Appellate Review*  § 123 (2007)).

30.     Here, as detailed below, the Indenture Trustee maintains that, as a matter of law, (i) the Bankruptcy Court lacked jurisdiction to enter the Orders and (ii) the MRC/Marathon Plan cannot lawfully, and in accordance with the law, go effective because, under the Plan's

unambiguous provisions, the "Effective Date" of the Plan has not occurred because appeals of the Confirmation Order are still pending.  This Court's resolution of the two aforementioned issues could materially advance the ultimate termination of the pending litigation, especially if the Court determines that the Bankruptcy Court lacked jurisdiction to enter the Orders. Furthermore, both the jurisdictional issue and the issue of whether the MRC/Marathon Plan can go effective are novel and difficult questions that the Bankruptcy Court answered in a fashion that is arguably contrary to existing jurisprudence.

**1.    The Bankruptcy Court Lacked Jurisdiction to Enter the Post–Appeal Orders.**

31.    It is a fundamental tenet of federal civil procedure that "the filing of a notice of appeal from the final judgment of a trial court normally divests the trial court of jurisdiction and confers jurisdiction upon the appellate court."  *Tex. Comptroller of Pub. Accounts v. Transtexas Gas Corp.* (*In re Transtexas Gas Corp.*), 303 F.3d 571, 578-79 (5th Cir. 2002) (citing *Griggs v. Provident Consumer Co.*, 459 U.S. 56, 58 (1982)).  Because this case involves a direct appeal to the Fifth Circuit from the Bankruptcy Court, as provided under 28 U.S.C. § 158(d)(2), the Fifth Circuit obtained jurisdiction over the case the moment it accepted certification.  *See Drive Fin. Servs. L.P. v. Jordan*, 524 F.3d 343 (5th Cir. 2008).  The acceptance of certification confers jurisdiction on the court of appeals and "divests the [lower court] of its control over those aspects of the case involved in the appeal."  *Griggs*, 459 U.S. at 58.  "This rule applies with equal force to bankruptcy cases."  *Id.*

32.    More specifically, "once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process."  *Whispering Pines Estates, Inc. v. Flash Island, Inc.* (*In re Whispering Pines Estates,*

*Inc.)*, 369 B.R. 752, 759–60 (B.A.P. 1st Cir. 2007) (bankruptcy court had no jurisdiction to modify confirmed plan to allow the transaction at the heart of the plan to go forward because even if not an express issue on appeal, it "so impacted the issues on appeal that the Bankruptcy Court was divested of jurisdiction over that issue.").  An order of a bankruptcy court which interferes with or attempts to circumvent the appeal process is null and void as a matter of law. *In re Southold Dev. Corp.*, 129 B.R. 18, 19 (E.D.N.Y. 1991).

33.    Accordingly, a bankruptcy court has no jurisdiction to modify a confirmed plan of reorganization while an appeal from a confirmation order is pending.  *See*, *Whispering Pines,* 369 B.R. at 759;  *Southold Dev. Corp.*, 129 B.R. at 19.  In particular, once an appeal from a confirmation order is pending, a bankruptcy court is divested of jurisdiction to modify the plan's effective date.  *Southold Dev. Corp.*, 129 B.R. at 19 (bankruptcy court order altering definitional section of plan to remove plan's automatic stay pending appeal to permit the debtor to close on the sale of property despite the pendency of appeals *held* void).  Such a change constitutes a "substantial alteration and modification of the plan."  *In re T-H New Orleans Ltd. P'ship*, 188 B.R. 799, 810 (E.D. La. 1995) (approving bankruptcy court's refusal to modify plan's "effective date" clause to become effective regardless of pending appeal), *aff'd*, 116 F.3d 790 (5th Cir. 1997).  "If the [plan proponent] had wanted such a plan, it should have proposed it as such originally.  The court cannot now let the [plan proponent] substantially modify the confirmed plan."  *Id.*; s*ee also Whispering Pines*, 369 B.R. at 760.

34.    Here, the Bankruptcy Court effectively modified the MRC/Marathon Plan to change the definition of "Effective Date" after the appellants filed their notices of appeal and after the Fifth Circuit granted permission for the direct appeal.  Because the Bankruptcy Court

had no jurisdiction to make this modification, the Orders are null and void and should be vacated. *In re Southold Dev. Corp.*, 129 B.R. at 19.

> **2.     The Language of the MRC/Marathon Plan is Clear and Unambiguous -- the Express Terms of the MRC/Marathon Plan Unequivocally Provide that the "Effective Date" of that Plan Will Not Occur So Long As Any Appeal From the Confirmation Order Remains Pending.**

35.     In order for the "Effective Date" to occur, two requirements must be met.  First, there must be a "Final Order" confirming the plan; and second, all conditions to the consummation of the plan under Article XI of the plan must have been satisfied or waived. Specifically, the "Effective Date" of the MRC/Marathon Plan is defined in "Appendix A to MRC/Marathon First Amended Plan, As Further Modified, with Technical Modifications" (the "Plan Appendix"), as follows:

> ***Effective Date*** means the date specified by the Plan Proponents in a notice filed with the Bankruptcy Court as the date on which this Plan shall take effect, and which occurs **after** (i) **the Confirmation Order becomes a Final Order**; **and** (ii) each of the conditions precedent to the Effective Date provided for in Article XI of the Plan have been satisfied or waived.

App. R at p. 4 (emphasis added).

36.     Thus, based upon the plain language of the Plan Appendix, which is incorporated into the MRC/Marathon Plan, the Effective Date will occur only after both (i) the Confirmation Order becomes a "Final Order" and (ii) all Article XI conditions have been satisfied or waived. Although part (ii) of the definition of Effective Date apparently permits the Article XI conditions to be waived, there is no provision permitting the requirement of a "Final Order" (set forth in clause (i) of this conjunctive provision) to be waived.

37.     The requirement for a "Final Order" is absolute; there is nothing either in the "Effective Date" definition or in the MRC/Marathon Plan itself that permits or contemplates the possibility of waiver.  This is in stark contrast to Section 11.2 of the MRC/Marathon Plan, which

expressly permits the waiver of any conditions set forth in Section 11.1.  Because the "Final

Order" requirement is indisputably not a condition contained in Section 11.1, Section 11.2 does

not operate to permit the "Final Order" requirement to be waived.

      38.     "Final Order," in turn, is defined in the Plan Appendix as follows:

> ***Final Order*** means an order of a court: (a) as to which the time to appeal,
> petition for writ of certiorari, or otherwise seek appellate review or to
> move for reargument, rehearing, reconsideration or stay has expired and **<u>as
> to which no appeal, petition for writ of certiorari, or other appellate
> review, or proceedings for reargument, rehearing, reconsideration or
> stay shall then be pendin</u>**g; or (b) as to which any right to appeal, petition
> for certiorari, or move for reargument, rehearing or stay shall have been
> waived in writing by all parties with such right; or (c) in the event that an
> appeal, writ of certiorari, or other appellate review or reargument,
> rehearing, reconsideration or stay thereof has been sought, which order
> shall have been affirmed by the highest court to which such order was
> appealed or from which writ of certiorari or other appellate review or
> reargument, rehearing, reconsideration or stay was sought, and as to which
> the time to take any further appeal, to petition for writ of certiorari, to
> otherwise seek appellate review, and to move for reargument, rehearing,
> reconsideration or stay shall have expired; provided, however, that the
> possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of
> Civil Procedure or under section 1144 of the Bankruptcy Code, or any
> analogous rule under the Bankruptcy Rules, may be filed with respect to
> such order shall not cause such order not to be a Final Order.

App. R at p. 5 (emphasis added).

      39.     Thus, based upon the plain language of the Plan Appendix, the Confirmation

Order cannot be a "Final Order" if any appeal is pending.  There is no provision (whether in the

definition of "Effective Date" or "Final Order" or in the MRC/Marathon Plan itself) that

qualifies, or permits a waiver of, that requirement.  Accordingly, so long as any appeals from the

Confirmation Order are pending, the confirmation order is not a "Final Order," and the

"Effective Date" therefore cannot then occur.

      40.     A plan of reorganization is a contract governed by the state law principles of

contract interpretation governing other contracts.  *See Advisory Comm. of Major Funding Corp.*

*v. Sommers (In re Advisory Comm. of Major Funding Corp.)*, 109 F.3d 219, 222 (5th Cir. 1997). The MRC/Marathon Plan recites that it will be governed by New York law.  *See* App R at Section 13.11.  Under New York rules of construction, extrinsic evidence may not be considered unless the document itself is ambiguous.  *See South Rd. Assocs., LLC v IBM Corp.*, 4 N.Y.3d 272, 278, 826 N.E.2d 806, 793 N.Y.S.2d 835 (2005); *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 807 N.E.2d 876, 879, 775 N.Y.S.2d 765 (2004).

41.    The Plan Proponents attempt to evade the plain meaning of the plan that they themselves drafted by arguing that their definition of "Final Order" was somehow modified by the Confirmation Order.  That argument defies logic for a number of compelling reasons.

42.    First, although the Plan Proponents made literally dozens of plan modifications after the conclusion of the confirmation hearing and after the Court had entered its findings of fact and conclusions of law, no changes whatsoever were made to the definition of "Effective Date," the definition of "Final Order," Section 11.1 of the plan, or Section 11.2 of the plan.  In fact, the Plan Proponents did not request, or even so much as mention, any modification to those provisions.  The Court should not now find that a *sub rosa* modification occurred.

43.    Second, it is critical to distinguish between the use of the words "final order" to mean "not interlocutory and therefore ripe for appeal," on the one hand, and the use of those words to mean "not subject to further appeal," on the other.  It would be nonsensical to read the words "final order" in the last paragraph of the Confirmation Order to mean "not subject to further appeal," because an appeal was clearly contemplated – in fact, the temporary stay contained in the Confirmation Order was expressly conditioned upon the Indenture Trustee's filing a notice of appeal.  Yet, "not subject to further appeal" is precisely what would be required for the Confirmation Order to constitute a "Final Order" as defined in the plan because the plan

defines "Final Order" as one from which no appeal has been taken or is pending.  Obviously, the Bankruptcy Court could not "order" that no appeal has been or could be taken from its own order.

44.     Third, the Confirmation Order incorporated the MRC/Marathon Plan into the Confirmation Order in its entirety and ordered that "each provision of the MRC/Marathon Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Order." *See* App. R at ¶ 49.   Moreover, the Confirmation Order adopted the definitions of terms contained in the MRC/Marathon Plan.  *See* App. R at Footnote 1.

45.     The Plan Proponents' Motion for Enforcement and Emergency Motion for Contempt went so far as to request modifications to the MRC/Marathon Plan to change the definition of "Effective Date."  Any such modifications, "technical" or otherwise, would require the Court to confirm the plan as so modified.  *See* 11 U.S.C. § 1127(b).  However, it is clear that the Bankruptcy Court has been divested of jurisdiction to modify the plan so long as the appeal from the Confirmation Order is pending.  *See Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.)*, 369 B.R. 752 (B.A.P. 1st Cir. 2007); *In re Southland Dev. Corp.*, 129 B.R. 18, 19 (E.D.N.Y. 1991); *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

46.     In sum, the Indenture Trustee submits that the relief approved in the Stipulated Order was entirely inappropriate.  The "Effective Date" provisions of the MRC/Marathon Plan are clear on their face and require a "Final Order" that is subject to no further appeal.  The Confirmation Order did not purport to, and did not, modify those provisions in any way.  Finally, as a result of the appeal from the Confirmation Order pending in the Fifth Circuit, the Bankruptcy Court has been divested of jurisdiction to confirm any modification of the Plan under

11 U.S.C. § 1127(b).  Therefore, it is evident that (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation.

**B.      The Orders Meet the Requirements of the Collateral Order Doctrine.**

47.      Alternatively, the Indenture Trustee contends that the Orders are appealable because they meet the requirements of the collateral order doctrine.  The "collateral order doctrine" provides for appellate jurisdiction over "a 'small class' of rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action,' . . . [as such] claims are 'too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Will v. Hallock*, 546 U.S. 345 (2006) (citations omitted); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143 (1993); *Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996).

48.      Courts have stated that

> [t]o qualify for review under this doctrine, "[t]he order must (1) deal with an issue that is independent from the substance of the other claims; (2) conclusively determine the question; (3) be unreviewable [sic] on appeal from a final judgment; and (4) involve a serious and unsettled question of law."

*Saddle Creek Energy Dev. v. Eagle Domestic Drilling Operations*, No. H-07-MC-217, 2007 WL 1702398, at *3 (S.D. Tex. June 12, 2007) (quoting *In re MCorp Fin., Inc.*, 139 B.R. 820, 823 (S.D. Tex. 1992)).

49.      First, the Orders decide issues that deal exclusively with consummation of the Plan, not the myriad of other issues that exist with regard to the Debtors' bankruptcy cases. Second, because the Bankruptcy Court has approved Scopac's agreement to take all of the actions necessary for consummation, the Orders conclusively determine the question with regard

to consummation of the MRC/Marathon Plan and the transfer of the assets of Scopac's estate and the Indenture Trustee's collateral.  Third, because there is a significant risk of substantial consummation of the MRC/Marathon Plan, which could potentially render the appeal of the Orders moot, the Orders are unreviewable on appeal from a final judgment.  *See In re Texas Equip. Co., Inc.*, 283 B.R. 222, 228 (Bankr. N.D. Tex. 2002); *In re Manges*, 29 F.3d 1034, 1038-39 (5th Cir. 1994) (noting that an appeal becomes equitably moot after the plan has been substantially completed and the rights of third parties would be affected); *see also In re Dynamic Tooling Systems, Inc.*, 378 B.R. 417 (B.A.P. 10th Cir. 2007) (finding appeal moot after lower court modified the effective date of a plan).  Lastly, the Indenture Trustee maintains that whether the Bankruptcy Court lacked the requisite jurisdiction to enter the Orders, as described above, is a serious and unsettled question of law that necessitates the granting of leave to appeal the Orders.

## V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Indenture Trustee respectfully requests that this Court grant the Indenture Trustee leave to appeal the Enforcement Order and the Stipulated Order and grant such further relief as the Indenture Trustee may be entitled, either in law or equity.  This Motion for Leave to Appeal is made expressly subject to, and without waiver of, any and all rights, remedies, motions, and requests, including, but not limited to, requests for stay and direct appeal relief.

Dated: Houston, Texas
      August 7, 2008

Respectfully submitted,

**FULBRIGHT & JAWORSKI, L.L.P.**


By:  *William Greendyke*
_____
Zack A. Clement          (SBTX 04361550)
William Greendyke        (SBTX 08390450)
R. Andrew Black          (SBTX 02375110)
Jason L. Boland          (SBTX 24040542)
Mark A. Worden           (SBTX 24042194)
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

-and-

Toby L. Gerber           (SBTX 07813700)
Louis R. Strubeck, Jr.   (SBTX 12425600)
O. Rey Rodriguez         (SBTX 00791557)
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

**Counsel for The Bank of New York Mellon
Trust Company N.A., as Indenture Trustee
for the Timber Notes**


# CERTIFICATE OF CONFERENCE

I hereby certify that on August 7, 2008, I conferred with opposing counsel in this matter regarding the relief requested in this Motion and am informed that the Motion is opposed.

_____
           */s/ R. Andrew Black*